(Decided 12th January, 1894.)

---

THE CENTRAL RAILWAY COMPANY *vs.* ELIAS BREWER.

*Malicious prosecution and False arrest—Liability of Corporation—Unauthorized Acts of Agent—Probable cause.*

Where a person on entering a street railway car, deposited in the fare box, a coin resembling a five cent piece or nickel, and shortly thereafter was informed by the driver that he had dropped

a lead nickel into the box, and was requested to redeem it, and he refused to do so, and he was subsequently arrested and held to bail at the instance of officers of the railway company on the charge of passing counterfeit money, such company is not liable for malicious prosecution and false arrest, unless the act of the officers in causing the arrest, was done by the express precedent authority of the company, or was ratified and adopted by the company.

An individual, on entering a street car, dropped in the fare box a coin resembling a five cent piece or nickel. When the car had proceeded a short distance the driver told the passenger that he had dropped a lead nickel in the box, and requested him to redeem it, pointing out to him the particular coin which was lying on the glass shelf of the box. The driver said that he had no right to open the box, and could not deliver the coin to the passenger, but that he could obtain the same at any time by calling at the office of the company. The passenger continued in the car, and passed the office of the company, without redeeming the counterfeit coin. Immediately thereafter, the superintendent and two other employés of the company, followed the car in which the passenger was, a short distance, and after he had left it, the superintendent approached him, and said, "you put a piece of counterfeit money in the box, and I would like you to make it good." But the passenger declined doing so. He was then taken before the United States Commissioner, where the charge of passing a counterfeit coin was made, the superintendent making the affidavit. The Commissioner required the party to give bail for his appearance on the day following, when the case was heard and he was discharged. In an action for malicious prosecution and false arrest, brought by the passenger against the railway company, it was HELD:

That there was probable cause for the arrest and prosecution of the plaintiff.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*First Exception.*— At the trial the plaintiff called A. M. Bowen, who testified that he was present at the examination before the Commissioner for the purpose of testi-

fying to Mr. Brewer's character, and that he heard the testimony of the officers of the railroad company. The plaintiff's counsel then asked the witness the following question: "I want you to state what their manner was at that trial—that is, if you remember, and it made an impression on you;" to which question the defendant's counsel objected, but the Court (WRIGHT, J.) overruled the objection, and the witness answered, "They seemed to be very anxious to convict the party if possible, and that was the manner in which they spoke." The defendant excepted.

*Second Exception.*—The testimony in the case having been closed on both sides, the plaintiff offered the four following prayers:

1. That if the jury find from the evidence that the defendant instituted, or caused to be instituted, or aided or assisted in the institution and carrying on of the prosecution under which the plaintiff was arrested, with malice and without probable cause, as the same are defined by the plaintiff's second and third prayers, and that the said prosecution was terminated before the commencement of this action by the discharge of the plaintiff, then the plaintiff is entitled to recover.

2. That if the jury find that the defendant instituted, or caused to be instituted, or aided or assisted in the institution and carrying on of the prosecution under which the plaintiff was arrested, if the jury shall find such arrest, and if the jury shall further find there were no circumstances connected with the transaction out of which the prosecution complained of arose, known to the defendant, which would induce a reasonable, dispassionate man to believe the plaintiff to have been guilty of the crime with which he was charged, and to induce such a man to have undertaken such a prosecution from public motive, then there was no probable cause for said prosecution as the words probable cause are used in the plaintiff's first prayer.

Granted in connection with the following instruction: The Court instructs the jury that if they shall find that the plaintiff was arrested under said prosecution, and that the defendant participated in the same, as recited in the above prayer of the plaintiff, still it is necessary for the plaintiff to satisfy the jury, by a preponderance of evidence in respect to said prosecution and arrest, that the defendant acted without probable cause (as defined in plaintiff's said prayer,) and it is not necessary that the plaintiff should have been in fact guilty of the crime charged, but it is enough for the defendant's justification, if the jury shall find that it acted on such facts and circumstances as would have induced a reasonable and dispassionate man to act as it acted.

3. That if the jury believe the prosecution was undertaken by the defendant without probable cause, as the same is defined in the plaintiff's second prayer, then they may infer, in the absence of sufficient proof to satisfy them to the contrary, that said prosecution was malicious in law, and the term malice, as used in these instructions, does not mean spite or hatred, or personal ill-will, but any improper or indirect motive or any motive other than that of bringing the party to justice.

Granted with the following addition: That while it is competent for the jury to infer malice from the want of probable cause (as defined in plaintiff's second prayer,) the question whether the defendant was actuated by such malice or not, is to be determined upon the whole evidence, and if upon the whole evidence the jury believe that the defendant did not act maliciously, then their verdict must be for the defendant.

4. If the jury shall find a verdict for the plaintiff, they are at liberty to take into consideration all the circumstances of the case, and award such damages as will not only compensate the plaintiff for the wrong and indignity he has sustained in consequence of the defend-

Central Railway Company *vs.* Brewer.

ant's wrongful act, but may also award exemplary or punitive damages as a punishment to the defendant for such wrongful act.

The defendant offered the three following prayers:

1. That there is no evidence in the cause legally sufficient to establish malice and want of probable cause upon the part of the defendant against the plaintiff in the arrest and prosecution of the plaintiff as set forth in the declaration; and their verdict must therefore be for the defendant.

2. That there is no evidence in the case legally sufficient to prove that any of the officers or agents of the defendant corporation were authorized by the company to have the arrest made which is complained of in the declaration, or that the company subsequently adopted and ratified the acts of said officers or agents, and the verdict must be for the defendant.

3. If the jury believe from the evidence that the driver of the defendant's car which the plaintiff got on at or about the corner of Druid Hill avenue and Biddle street, on the 14th day of July, 1891, as detailed in the testimony, informed Bell, the treasurer of the defendant company, that the plaintiff had put a counterfeit coin in the fare or Slawson box of the car, and that the said Bell at once notified Joseph Hopps, the superintendent of the company, of the alleged fact, as detailed by the testimony, and that said Hopps acted on said information in ordering the arrest of the plaintiff, then there was probable cause for said arrest, and their verdict must be for the defendant.

The Court granted the first and fourth prayers of the plaintiff as offered, and his second and third prayers, with the indicated addition to each, and rejected the prayers of the defendant. The defendant excepted, and the verdict and judgment being against it, appealed.

Central Railway Company *vs.* Brewer.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, ROBERTS, MCSHERRY, and BRISCOE, J.

*George Blakistone,* and *T. Wallis Blakistone,* for the appellant.

*Oscar Wolff,* and *Alfred S. Niles,* for the appellee.

ROBERTS, J., delivered the opinion of the Court.

This is an action for malicious prosecution, and for false arrest, whereby the plaintiff seeks the recovery of damages of the defendant company, a body corporate of the State of Maryland.

The declaration alleges that the defendant falsely, maliciously, and without probable cause whatsoever, caused the plaintiff to be arrested upon a writ issued by a Commissioner of the Circuit Court of the United States, for the District of Maryland, upon the charge of passing counterfeit money, knowing the same to be false and counterfeit, and with intent to defraud; whereupon the Commissioner required the plaintiff to give bail for his appearance before him the day following for a hearing, when said charge was dismissed, and the appellee discharged. In the second count, it is alleged that the defendant assaulted the plaintiff and gave him into custody of a police officer upon a false charge, and required him to go before the said Commissioner and give bail for his appearance, &c.

To this declaration the defendant pleaded, that it did not commit the wrongs alleged.

The facts are, that the defendant was engaged in running cars upon certain streets of the City of Baltimore, for the conveyance of passengers. The plaintiff boarded one of the cars of the defendant, at the corner of Druid Hill avenue and Biddle street, and before taking his seat, dropped into the fare box, which was of the Slawson

Central Railway Company *vs.* Brewer.

patent, a coin resembling a five cent piece or nickel. When the car had proceeded nearly the distance of a short block, the driver of the car called the plaintiff to him, and told him that he had dropped a lead nickel in the box, and requested him to redeem it. The driver pointed out to the plaintiff the particular coin, which was lying on the glass shelf of the box, which is an inclined glass plate held in such position, that the coins which are dropped into the box, fall upon the upper surface of the inclined plane of the glass shelf. This glass shelf is intended to give to the driver a careful scrutiny of the coins deposited for fares, before the same are dropped into the lower part of the box. The testimony conclusively shows that the nickel in question was deposited in the box by the plaintiff. It is equally clear, that the coin so deposited was a leaden nickel or counterfeit coin of the United States. And notwithstanding the driver told the plaintiff that he must redeem the counterfeit coin, and that he could not deliver the same to him, as a driver had no right to open the box, but that he could obtain the same at any time by calling at the office of the company, the plaintiff continued in the car, and passed the office of the company, without paying further attention to the matter.

Immediately thereafter, three of the employés of the defendant, the driver of the car in question, the treasurer, and also the superintendent, followed the car in which the plaintiff was a short distance, and after the plaintiff had left it, the superintendent approached him and said, "You put a piece of counterfeit money in the box, and I would like you to make it good," but the plaintiff declined doing so, and said there was nothing the matter with the nickel, only a piece out of the corner of it. The plaintiff was then taken before the United States Commissioner, where the charge of passing a counterfeit coin was made, the superintendent

making the affidavit. The Commissioner held the plaintiff under bail for his appearance on the day following, and detained him for about two hours, until bail was furnished. On the day following the making of the charge, the case was heard by the Commissioner, and the plaintiff discharged.

At the trial below there were two exceptions taken. One relating to the Court's action on the prayers, and the other to the admissibility of certain testimony. The liability of corporations aggregate for *torts* committed by them through their agents has, in recent years, received a good deal of attention from the Courts. It may indeed be said that the question of corporate liability for *torts* has been in a progressive stage; but step by step, have the limits of such liability been enlarged and extended, until now, there is but little difference between corporate liability and individual liability with respect to *torts*.

In consequence however of the fact that a corporation must of necessity act through its agents, Courts have almost invariably held that to hold a corporation liable for a tortious act committed by its agent, the act must be done by its express precedent authority, or ratified and adopted by the corporation. Nor is a corporation responsible for unauthorized and unlawful acts, even of its officers, though done *colore officii*. To fix the liability, it must either appear that the officers were expressly authorized to do the act, or that it was done *bona fide*, in pursuance of a general authority, in relation to the subject of it, or that the act was adopted or ratified by the corporation. *Ang. & Ames on Corporations, sec. 311, (10th Ed.)*; *Carter vs. The Howe Machine Co.*, 51 *Md.*, 296.

When the plaintiff was arrested and held to bail in the manner already stated, the affidavit was made by the superintendent of the defendant. It is asserted in

the brief of the appellee that the president of the defendant was also present at that time; we fail, however, to discover the fact in the record. But in our view of the case, it is immaterial whether he was or was not. The president was but the agent of the defendant, as were the other officers and employés. There is nothing in the record which directly or indirectly tends to show that the superintendent was acting in pursuance of express precedent authority from the defendant (51 *Md.*, 298,) in causing the arrest of the plaintiff, nor had he any implied authority for so doing, arising out of the scope of his employment, so far, at least, as the testimony in the record discloses. The fact that he had general authority to look after and manage the affairs of the defendant in running its cars on the streets of Baltimore City for the carriage of passengers, in no manner suggests that he had, unless expressly authorized so to do by his principal, any authority to arrest a passenger for placing in the fare box a leaden nickel in payment of his fare. He may have a general authority to look after and protect the property of the defendant, and he may possess all the powers properly pertaining to such employment, and yet he would not be empowered to invoke the aid of the criminal law on behalf of his company, unless he had express precedent authority. And if this be true of the superintendent, it is equally true of the other agents and employés of the defendant. As to the subsequent ratification or adoption by the defendant, the testimony is very meagre and inconclusive. At the hearing of the charge the president, the superintendent and the driver testified, and the impression made upon the mind of the Commissioner is described by him in his testimony, when he says, "there was nothing in the conduct or manner of the officers or employés of the railway company before him to indicate that they wanted to do anything more

than tell the facts which were within their knowledge, and which appertained to their examination."

The fact that the president, superintendent and driver testified before the Commissioner affords no legally sufficient evidence of ratification or adoption, for if they were without authority in causing the arrest, the subsequent testimony given for the government by them, or the manner in which they demeaned themselves in delivering their testimony, in no way supports the theory of adoption or ratification. *Tolchester Beach Improvement Co. vs. Steinmeier*, 72 *Md.*, 320.

There was not, we think, any legally sufficient evidence given at the trial below from which the jury could have properly inferred either express precedent authority to justify the agents of the defendant in causing the arrest of the plaintiff, nor was there any legal evidence which establishes the adoption or ratification by the defendant of the acts of its agents.

It was certainly not within any of the usual objects or powers of the defendant company to prosecute offenders against the criminal laws of the United States, and it has not been contended that any such powers ever were specially conferred on the defendant.

Whilst Courts of some of the States have held corporations to a strict liability in actions of like character with the one now under consideration, we are following the doctrine which we think this Court has correctly announced in the case of *Carter vs. The Howe Machine Co.*, 51 *Md.*, 290.

To hold differently would, we think, be opening wide the door to a class of cases, which Courts do not look upon with favor. Public justice has its claims, as well as the individual citizen, and it is no part of the privileges of the latter, that he can, with impunity, ignore the reasonable demands of the former.

We do not however sanction the idea that the rights and liabilities of the citizen can be trifled with, and

unfounded charges preferred, without holding the accuser to a just responsibility. And when corporations authorize their agents to maliciously commit wrongs against the citizen, or ratify or adopt such acts when done, they should be held responsible therefor. The right and the duty of the citizen are reciprocal. He should conduct himself in such manner as not to excite a well founded suspicion that he is a wrong-doer; if he does not, he has no just cause to complain of the consequences. *Carl vs. Ayers*, 53 *N. Y.*, 14. This case now under consideration illustrates our meaning.

If the plaintiff when charged with passing a counterfeit coin with intent to defraud, had exercised a reasonable degree of prudence, which he could have done by dropping a good coin into the box, for the bad one, or by going a few steps to the office of defendant, which he was then nearing, and about to pass, and redeemed the bad coin, there could have been no possible cause for trouble, but he declined to do either. Having paid no fare for the ride which he took, he quietly walks off, ignoring the obligation he was under to the defendant to pay his fare, and paying no attention to the complaint of the driver, that he had dropped a leaden nickel in the fare box. We take it to be very clear from the testimony as already stated in this opinion, that the plaintiff did deposit the leaden nickel in the box, and that it was a counterfeit coin. The plaintiff himself has not sought to disprove either fact. Under these circumstances he should have pursued a different course, if he desired to relieve himself from the consequences which reasonably followed. He had ample time to consider and determine upon the course which he thought proper to pursue, and we think he acted in such manner, at least, to justify the agents of the defendant in believing that, even though he may have unintentionally deposited a bad coin in the box, he was afterwards willing to avail

Central Railway Company *vs.* Brewer.

himself of his position, and apply the counterfeit nickel to the payment of his fare. He failed to better his position when he subsequently, at the instance of the Commissioner, gave a good nickel to the president of the defendant. The agents of the defendant were unskilled in the refinements of the law, and we think, in what they did, they acted *bona fide*, and with reasonable and probable cause for their conduct. The plaintiff by his course excited suspicion, and invited the charge, and thus brought upon himself the unpleasant consequences that followed, which, we think, could have been averted by a reasonable regard for the duty incumbent upon him, under the circumstances. *Wilmarth vs. Mountford, et al.*, 4 *Wash.*, 79.

In this case we have failed to discover, by implication or otherwise, the slightest degree of malice. None could be inferred from the want of probable cause, because its absence has not been shown. The plaintiff, in his testimony, speaking of the agents of the defendant said, "that he knew of no reason why they should have had any feeling against him, and he really had no right to think that they had."

The question of the presence or absence of probable cause for a criminal prosecution does not depend upon the guilt or innocence of the accused, or upon the fact whether or not a crime has been committed. *Baldwin vs. Weed*, 17 *Wend.*, 224; *Bacon vs. Towne and others*, 4 *Cush.*, 218. And if a person act upon appearances in making a criminal charge, and the apparent facts are such, as to lead a discreet and prudent person to believe that a crime has been committed by the party charged, although it turns out that he was deceived, and the party accused was innocent, yet he will be justified. *Carl vs. Ayers, supra.*

The well settled doctrine is that an agent has implied authority to do only such acts as relate to his own

particular duties. This theoretical principle is easily enough expressed, and comprehended, but it is just here that the greatest difficulties arise in defining the extent of the principal's liability. The decided cases which illustrate this view are numerous, and we will refer to some of them as explanatory of the doctrines maintained in this opinion, and which, we think, correctly state the law. In the case of *Roe vs. The Birkenhead, Lancashire and Cheshire Junction Railway Company*, 7 *Exch.*, 36, it appears, "That a passenger being desirous of going by an excursion train from Monks Ferry, (the defendant's station) to Bangor and back, inquired of the clerk at the former station by what train he could return, the clerk informed him that his ticket would be available by the evening train from Bangor; the plaintiff accordingly obtained an excursion ticket and returned by the train mentioned by the clerk. On arriving at the platform near to the Chester station, a railway servant who had charge of the train, upon receiving the plaintiff's ticket told him that he had come by the wrong train, and that he must pay 2*s.* 6*d.* more. This the plaintiff refused to pay, and he was thereupon taken into custody by a railway servant, under the direction of a superintendent; but after having been a short time in custody, he paid the money under protest and was released. It appeared that the Chester station was occupied by the defendant's company, and by several other railway companies; but one of the witnesses stated that he believed that the person who took the plaintiff into custody to be one of the servants of the defendant's company."

"The plaintiff's attorney having written to the secretary of the defendant's company for compensation, received a written answer from him, requesting that he might be furnished with the date of the transaction, and promising to make the necessary inquiries. The secretary also stated, that it was an awkward business,

and that the blame would fall upon the clerk at the station, who had given the false information; and he also offered to repay to the plaintiff the sum of 2*s.* 6*d.*, he had been compelled to pay:—Held, in an action against the defendants for the arrest, that the circumstances of the case did not afford any evidence that the arrest had been made by the authority, either express or implied, given by the company, or that they had ratified the act.

In the case of *The Eastern Counties Railway Co. vs. Broom*, 6 *Exch.*, 314, it appeared that the plaintiff, a passenger on the cars of the company, when demanded to deliver up his ticket to the collector, refused so to do; he was requested to quit the carriage, which he also refused to do, whereupon he was, with necessary force only, *removed.* A servant of the company then took the plaintiff before a magistrate for an alleged breach of one of the company's by-laws. The attorney of the company attended before the magistrate to conduct the charge, which the Court held was no evidence that the company ratified the act of their servant.

In the case of *Mali vs. Lord*, 39 *N. Y.*, 381, the question was, whether a merchant, by employing a clerk to sell goods for him in his absence, or a superintendent *to take the general charge and management of his business* at a particular store, thereby confers authority upon such clerk or superintendent to arrest, detain, and search any one suspected of having stolen and secreted about his person any of the goods kept in such store. The Court says: "In examining this question, it must be assumed that by the employment the master confers upon the servant the right to do all necessary and proper acts for the protection and preservation of his property, to protect it against thieves and marauders, and that the servant owes the duty so to protect it to his employer. But this does not include the power in question. It cannot be presumed that a master, by entrust-

ing his servant with his property, and conferring power upon him to transact his business, thereby authorizes him to do any act for its protection, that he could not lawfully do himself, if present. The master would not, if present, be justified in arresting, detaining and searching a person upon suspicion, however strong, of having stolen his goods and secreted them upon his person. The authority of the defendants to the superintendent could not, therefore, be implied from his employment. The act was not done in the business of the defendants, and they were not, as masters, responsible therefor.''

We do not think it necessary to pursue the inquiry further. There are many other cases closely analogous to those quoted, among which are: *Pressley vs. Mobile & G. R. Company*, 15 *Federal Reps.*, 199; *Bank of New South Wales vs. Oweston*, 48 *L. J., P. C.*, 25; *Danby vs. Beardsly*, 43 *L. T., N. S.*, 603; *Allen vs. London and S. W. R. Co., L. R.*, 6 *Q. B.*, 65; *Poulton vs. London and S. W. R. Co., L. R.*, 2 *Q. B.*, 534; *Brokers vs. New Jersey R. R. & Transp. Co.*, 3 *Vroom.*, 326; *Vanderbilt vs. The Richmond Turnpike Co.*, 2 *N. Y.*, (2 *Comstock*,) 479.

It follows from the views expressed that we are of opinion that there was no legally sufficient evidence in this cause to justify submitting the same to the jury. When all the facts, which the plaintiff's evidence conduces to prove, do not show a want of probable cause, it becomes a mere question of law, which the Court must decide, and it will be useless and improper to take the opinion of the jury upon it.

The defendant's first and second prayers announced the law of the case and should have been granted. The plaintiff's first, second and third prayers ought to have been rejected. There is no objection to the law of the fourth prayer in a proper case. We think the Court below was in error in allowing the question to be asked which

is contained in the first exception, for the reason, that if the agents of the defendant had no authority to make the arrest, they could not by their demeanor at the hearing, make the company liable, when there had been no precedent authority or subsequent ratification. The judgment below must be reversed without a new trial.

*Judgment reversed,*
*without a new trial.*

(Decided 12th January, 1894.)