# THE CANTON NATIONAL BANK *vs.* THE AMERICAN BONDING AND TRUST COMPANY.

*What Constitutes Larceny—Principal or Accessory Before the*
*Fact—Action on Bond of Contractor of Bank Liable for*
*His Embezzlement or Larceny—Direction of Cashier*
*for Unauthorized Payment of Checks—Pleading—*
*Assignment of Breaches of Bond.*

In order to constitute larceny, it is not necessary that the person wrongfully taking another's property should have the purpose of obtaining a pecuniary advantage or gain for himself. If he takes for the purpose of giving the property to a third person, it is larceny.

In every larceny there must be a taking from the possession of the owner against his will, but the taking need not be by the hand of the accused himself, for if he causes another person to take the goods for him, his offense is larceny.

He who procures another to take the property is, if present, guilty as principal, and if absent, is guilty as an accessory before the fact.

A bond executed for the faithful performance of the duties of a cashier of a bank provided that the surety would make good to the bank such pecuniary loss as it might sustain by reason of any fraudulent or dishonest conduct of the cashier in connection with his duties amounting to embezzlement or larceny. In an action on the bond by the bank the declaration did not charge in general terms the loss of the plaintiff's money by the acts of the cashier amounting to larceny, but set forth the particular acts alleged to have been larcenous. In some of the counts it was alleged that the cashier, without any authority to do so, and with the intention of feloniously taking and carrying away from the possession of the plaintiff, the several sums of money for which checks and notes were drawn, caused the teller of the bank to pay said checks and

notes when there was not sufficient money to the credit of the drawers of the same to justify their payment. *Held,* that if these sums were paid out of the funds of the plaintiff under such circumstances, and the teller was innocent of any felonious intent, or if he participated in the felonious intent and the money was taken and paid in the presence of the cashier, then the cashier was guilty of larceny, but if the teller was guilty and the several sums of money charged to have been taken by him were not taken and paid in the presence of the cashier, then the cashier was only guilty as an accessory before the fact; and that these counts are defective, in that they fail to show whether the cashier was guilty as principal or as accessory.

*Held,* further, that other counts of the declaration are bad on demurrer, because they do not allege that the money paid out on the checks therein mentioned was paid out of the funds of the bank.

A bond conditioned for the faithful performance of the duties of a cashier of a bank during a certain term provided that the surety would be liable for his fraudulent acts amounting to embezzlement or larceny "which shall have been committed during said term and discovered during said term or within three months after the expiration thereof." *Held,* that in an action on the bond a declaration is bad on demurrer which fails to show when the alleged fraudulent acts of the cashier were discovered.

In an action on an indemnity bond, it is not necessary that the declaration should set out in a separate count each breach of the bond, but the assignment of each breach should be perfect in itself.

*Decided June 29th, 1909.*

Appeal from the Superior Court of Baltimore City.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*William S. Bryan, Jr.* (with whom were *Penrose & Stanton* on the brief), for the appellant.

*Edward Duffy* (with whom were *Bond & Robinson* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

This suit was brought by the Canton National Bank against The American Bonding and Trust Company on a surety bond to recover losses suffered by the plaintiff through its cashier, John W. H. Geiger.

By its bond, executed for the term beginning on the 26th day of September, 1896, and ending on the 26th day of September, 1897, and renewed from year to year so as to be in force down to and including the 26th day of September, 1907, the defendant covenanted and agreed, subject to the provisions and conditions therein contained, at the expiration of three months next after delivery to the company of proofs satisfactory to it of a loss within the term of the bond, to "make good and reimburse to the" plaintiff "to the extent of ten thousand dollars and no further, such pecuniary loss, if any, as may be sustained by the employer by reason of any fraudulent or dishonest conduct of the employed in connection with the duties of said position, amounting to embezzlement or larceny, which shall have been committed during said term, and discovered during said term or within three months after the expiration thereof."

The bond is set out in full in the declaration, which then charges, in one count, seven distinct acts of the cashier, each one of which the plaintiff claims amounts to larceny. The defendant demurred to the declaration, the demurrer was sustained, plaintiff declined to amend and judgment was entered for the defendant, and from that judgment this appeal was taken.

By the terms of the bond the losses which the defendant undertakes to make good are limited to those occasioned by such acts of the cashier as amount to embezzlement or lar-

ceny, and the contention of the appellee in this Court is that the several acts of the cashier set out in the declaration, and not claimed to be embezzlement, do not amount to larceny. The first inquiry, therefore, is, what is larceny?

In 2 *Russell on Crimes,* 1 (6 Am. ed.), it is said that: "In a late work of great learning and research, larceny is defined at large to be 'the wrongful and fraudulent taking and carrying away by any person of the mere personal goods of another, from any place, with a felonious intent to convert them to his (the taker's) own use, and make them his own property, without the consent of the owner.'" In 1 *Wharton's Crim. Law,* sec. 862 (8th ed.), where the definitions given by Baron Parke, Coke, Hawkins and Blackstone are criticised, larceny is said to be "the taking and carrying away of a thing unlawfully and without claim or right with the intention of converting it to a use other than that of the owner," and in 2 *Bishop's New Crim. Law,* sec. 758, larceny is defined as "the taking and removing by trespass, of personal property which the trespasser knows to belong either generally or specially to another, with the felonious intent to deprive the owner of his ownership therein; and, perhaps it should be added, for the sake of some advantage to the trespasser—a question on which the decisions are not harmonious."

These learned authors agree that even where it is held that the taking must be *lucri causa,* it is not necessary that the motive should be one of *pecuniary* gain, any advantage to the prisoner is sufficient; and they cite authorities to the effect that to take to give away is larceny. 1 *Wharton's Crim. Law,* sec. 896; 1 *Russell on Crimes,* 2; 2 *Bishop's New Crim. Law,* secs. 840-849. While it is intimated in *State* v. *Hodges,* 55 Md. 127, that the taking must be *lucri causa,* and in the case of *Worthington* v. *State,* 58 Md. 403, larceny is said to "consist in the wrongful taking and carrying away the chattels of another with a felonious intent to convert them to the taker's own use," in the recent case of *Williams* v. *U. S. Fidelity Co.,* 105 Md. 494, this Court said that

"Larceny, at common law, was the felonious taking of the property of another against his will with the intent to convert it to the use of the taker or, as some authorities hold, the use of the taker or a third' person." Mr. Bishop says (vol. 2, sec. 846), that the English Courts have at last overthrown the old notion of *lucri causa.* In the case of *Reg.* v. *White.* 9 C. & P. 344, the prisoner White, was charged with larceny and the prisoner, Sellers, was charged with receiving, etc., and ERSKINE, J., said: "If the prisoner, Eliza White, took the property and handed it to the other prisoner, as a gift, it was as much a felony as it would have been if she had sold it. The purpose for which she took it is not material." The case of *Reg.* v. *Privett,* 2 C. & K. 144, goes to the full extent of holding that it is not necessary that the prisoner should have intended to derive some benefit or gain to himself. In that case the jury found that the prisoners took the oats from their master with the intent to give them to their master's horses, and without any intent to apply them to their private use, and EARLE, J., reserved the case for the fifteen judges, who held the conviction of larceny right. In 25 *Cyc.,* 52, it is said that: "According to the weight of authority the felonious intent required for larceny is not necessarily an intent to gain advantage for defendant; an intention to deprive the owner of his property is enough," while in 18 *Am. & Eng. Ency. of Law,* 504 (2nd ed.), the preponderance of authority is said to be the other way, but that "It is not necessary that the benefit should be of a pecuniary nature—it is sufficient that he intended to exercise proprietary rights to the permanent deprivation of the real owner, as where the purpose of the taking was to convert the thing taken to the use of a third person or merely in order to make a gift to a third person."

In every larceny there must also be a taking and a trespass, that is to say, there must be a taking from the possession of the owner against his will. The taking however, need not be by the hand of the accused; "if he procure a person innocent of any felonious intent to take the goods for him—

his offence will be the same as if he had taken the goods himself." 2 *Russell on Crimes,* 4; 1 *Bishop's New Crim. Law,* secs. 631 and 651; 1 *Wharton's Crim. Law,* sec. 207; 25 *Cyc.,* 58; 18 *Am. & Eng. Ency. Law,* 468 (2d ed.) ; *Hochheimer's Crimes and Pro.,* sec. 31; *Com.* v. *Barry,* 125 Mass. 390. Where the person who actually takes the property is also guilty, he who procured him to commit the larceny is, if present, guilty as principal, and if absent, is guilty as an accessory before the fact.    *Hochheimer's Crimes & Pro.,* secs. 26-38; 25 *Cyc.,* 58; 1 *Bishop's New Crim. Law,* sec. 651; 1 *Wharton's Crim. Law,* sec. 207.

In the light of these principles, we will now consider the several acts or breaches charged in the declaration.

The first charge is that on the 22nd day of November, 1906, the cashier, who was then a member of the firm of German & Company, caused to be drawn a check on the plaintiff in the name of said company for the sum of $2,500, in favor of his brother, George H. Geiger, and delivered the check to him; that thereupon his brother presented the check to the paying-teller of the plaintiff, and that the paying-teller, acting under the orders and directions of John W. H. Geiger, who was then and there the cashier of the plaintiff, paid the said George H. Geiger, in currency, $2,500 the amount of said check; that at the time the check was cashed "there were no sufficient funds to the credit of German & Company to satisfy and pay said check," and that the check was not charged against their account, but by the direction of the cashier was "held in the cash of the paying-teller of the plaintiff;" that said sum of $2,500, received by George H. Geiger, was, by the direction of the cashier, applied to purposes foreign to the interests of the plaintiff, and that when the cashier ordered the paying teller of the plaintiff to turn over the $2,500 to George H. Geiger, he acted with the felonious intention of causing the said sum of $2,500 to be wrongfully taken and carried away from the possession of the plaintiff and of causing the plaintiff to be deprived of the same.

2. The second charge is that on the fifth of October, 1906, there was deposited with the plaintiff by the United Surety Company the sum of $4,500, the understanding between the plaintiff (acting solely through the cashier and without the knowledge of the other officers of the plaintiff) and the United Surety Company being that said deposit of $4,500 should be subject to the check of German & Company only when said check was countersigned by Charles B. Brown, on behalf of the Surety Company; that German & Company assented to the arrangement and a separate account, representing this deposit, was opened with the bank by German & Company, designated as German & Company No. 2; that on the 7th of December, 1906, a check for $4,500 was drawn through the procurement and direction of the cashier by German & Company against this account, but was not countersigned by Charles B. Brown; that this check for $4,500 was, by the direction of the cashier, charged to the account of German & Company No. 2, and was then substituted in the cash of the paying teller of the plaintiff for the check of $2,500, cashed for George H. Geiger, and a memorandum of $2,000 credited to German & Company, and that the memorandum was then taken from the cash of the paying teller by the cashier.

3. The third charge is, that on November 12th, 1906, there stood to the credit of German & Company in their account with the plaintiff $241.29; that on that day a check drawn on that account for $500 was paid out of the plaintiff's funds by the direction of the cashier, and that from that time until and including the 24th of November, 1906, the account of German & Company was continuously overdrawn, although divers and sundry deposits during that period were made by the said German & Company; that notwithstanding the fact that the account of German & Company was continuously overdrawn during the above mentioned period, divers and sundry checks, including the check of $500 amounting in the aggregate to $10,733.63 were paid out of the funds of the plaintiff by the direction and order of the cashier; that on

the 24th of November, 1906, the account of German & Company was balanced by crediting $800 deposited that day, and the said memorandum of $2,000 and that when the cashier ordered the paying teller to make payment of each of the above mentioned checks of German & Company, the payments of which were not warranted by cash standing to their credit, he, the said cashier, acted with the felonious intent of causing the sums of money called for by said checks to be wrongfully taken and carried away from the possession of the plaintiff, and of causing the plaintiff to be deprived of said sums of money.

4. The fourth charge is that on August 3rd, 1906, there stood to the credit of the Maryland Plumbing and Tinning Company, in which the cashier had a large pecuniary interest, the sum of $22.33; that on that day a check was drawn on said account by said company for the sum of $290.08, and another check for $27.54, and that both of said checks were paid out of the plaintiff's funds by the order and directions of the cashier; that from that time until and including the fourth day of January, 1907, the account of said company was continuously overdrawn, although divers and sundry deposits were made during that period by said company; that notwithstanding the account of the company was continuously overdrawn during the above mentioned period divers and sundry checks, including the above mentioned checks, amounting in the aggregate to $22,937.29, were paid out of the funds of the plaintiff by the direction and order of the cashier; that on the 4th of January, 1907, the amount of the overdraft of the account of said company was $778.71, which is still due the plaintiff, and that when the cashier ordered the paying teller to make payment of each of the above mentioned checks of said company, the payment of which was not warranted by the cash standing to the credit of said company, he, said cashier, acted with the felonious intent of causing the sums of money called for by said checks to be wrongfully taken and carried away from the possession of

the plaintiff, and of causing the plaintiff to be deprived of the same.

5. The fifth charge is that from the 15th of December, 1905, to the 26th of November, 1906, divers and sundry checks of the Maryland Plumbing and Tinning Company, in addition to the checks above mentioned, and divers and sundry promissory notes of said company, amounting in the aggregate to $7,307.02, were paid by the paying teller of the plaintiff by the order and direction of the cashier and (also by his direction and order) held in the cash of the paying teller until December 5th, 1906, at which time the cashier deposited in said cash his own check for $3,323.50, and three checks of a certain John Schlee, one for $1,143.10, one for $1,000, and one for $1,880.14, and withdrew from said cash the checks and notes of said company; that said checks of John Schlee were obtained by the cashier for the purpose of paying certain promissory notes of said Schlee which fell due to the plaintiff, and that instead of using the checks for such purpose the cashier fraudulently used the same for the purpose above stated, and that when the cashier ordered the paying teller to make payment of the above mentioned checks and notes of said company, the payments of which were not warranted by the cash standing to the credit of the company, he acted with the felonious intention of causing the sums of money · called for by said notes and checks to be wrongfully taken and carried away from the possession of the plaintiff, and of causing the plaintiff to be deprived of the same.

6. The sixth charge is that on the 31st of December, 1906, there appeared on the books of the plaintiff a balance to the credit of German & Company of $103.49; that on January 2nd, 1907, one check for $50 and three checks, each for $300, were drawn against their account; that on January 4th, 1907, a check for $1,025 was drawn against said account; that on January 8th, 1907, a check for $105, and another check for $400 were drawn against said account, and on January 9th, a check for $400 was drawn against said account, making

in all checks for $2,940.75, each one of which was paid by the paying teller of the plaintiff by the order and direction of the cashier, and in the aggregate the payment of said checks made an overdraft of $2,837.26; that when the cashier ordered the paying teller of the plaintiff to pay each of last mentioned checks, the payment of which was not warranted by the cash standing to the credit of German & Company, he, the cashier, acted with the felonious intention of causing the sums of money called for by said checks to be wrongfully taken and carried away from the possession of the plaintiff, and of causing the plaintiff to be deprived of the same.

7. And the seventh and last charge is that, as appears from the statement filed with the declaration as a part thereof, marked plaintiff's Exhibit No. 4, George H. Geiger was, by the order and direction of the cashier, permitted to have ·divers and sundry checks paid by the paying teller of the plaintiff which caused the account of the said George H. Geiger to be overdrawn to the amount of $115.84, which sum is still due and unpaid, and that when the cashier ordered the paying teller to make payment of the checks to his brother, not warranted by the cash standing to the credit of his brother, he, the cashier, acted with the felonious intention of causing the sums of money called for by said checks to be wrongfully taken and carried away from the possession of the plaintiff, and of causing the plaintiff to be deprived of said sums of money.

The declaration further charges that the cashier, in ordering the payment of the above mentioned checks and notes, acted without the assent or authority of the Board of Directors of the plaintiff "and without warrant or authority from any by-laws or regulations of the plaintiff" and that the plaintiff "has done all things required to be done by it by said bond."

Now the plaintiff, instead of charging in more general terms the loss of the money through the fraudulent and dishonest acts of the cashier amounting to larceny, as was done in the case of *Am. Bonding and Trust Co.* v. *Milwaukee Co.,*

91 Md. 733, has elected to set out the particular acts by which it sustained the losses it seeks to recover, and which, it claims, amount to larceny, and unless these allegations sufficiently charge the larceny the declaration is bad.

In the first, third, fourth, fifth, sixth and seventh breaches it is alleged that the cashier, without any authority to do so, and with the intention of *feloniously* taking and carrying away from the possession of the plaintiff the several sums of money for which the checks and notes were drawn, caused the teller of the plaintiff to pay said checks and notes when there was not sufficient money to the credit of the drawers of the checks to justify their payment. If these sums of money were paid out of the funds of the plaintiff under such circumstances, and the teller was innocent of any felonious intent, or if he participated in the felonious intent, and the money was taken and paid in the presence, actual or constructive, of the cashier, then the cashier, under the authorities we have cited, was guilty of larceny, but if the teller was guilty, and the several sums of money charged to have been taken and paid by him, were not taken and paid in the presence of the cashier, the cashier was only guilty as an accessory before the fact. While at common law, and in this State, the penalty is the same, "The offenses of principal and accessory before the fact" in larceny are distinct, and there cannot be a "conviction of one charge upon an allegation of the other, and an acquittal upon one charge is no bar to a trial upon the other." *Hochheimer's Crimes and Crim. Proc.*, secs. 37-38; 1 *Wharton's Crim. Law*, sec. 238; 1 *Bishop's New Crim. Law*, sec. 663; *Code*, Art. 27, sec. 261.

In the first, fifth, sixth and seventh breaches charged in the declaration the pleader does not say that the money paid on the checks therein mentioned was paid out of the funds of the plaintiff, and while it may be inferred from other facts charged, it is not distinctly alleged. In the third, fourth, fith, sixth and seventh breaches, it is not alleged that the teller of the bank was innocent of the larceny of which the cashier is charged to have been guilty, or that the money

taken and applied by the teller to the payment of the checks and notes was taken in the presence of the cashier. It does not, therefore, appear from the charges made in these breaches that the cashier was guilty of the larceny of the money taken and applied by the teller to the payment of the checks and notes referred to. In the second breach there is no charge that either the cashier or the teller took the money of the bank. As the facts set out in the declaration are not sufficient to show that the losses suffered by the plaintiff were sustained by reason of such fraudulent and dishonest conduct of the cashier as amounted to larceny or embezzlement, they are not sufficient to entitle the plaintiff to recover under the terms of the bond sued on.

While it does not appear to be necessary to set out in a separate count each breach of a bond of the kind sued on in this case [*Evans' Harris,* Vol. 2, 188, (cited in 1 *Poe's P. & P.,* page 798), *Bullen and Leake, Precedents & Plea.,* 114-118, (3rd ed.); Vol. 3, *Ency. Plea. & Prac.,* 659-660; 3 *Ency. of Forms,* 730-731; *People* v. *Brush,* 6 Wend. 454), it is said in 3 *Ency. Plea. & Prac.,* 661, that "The assignment of each breach of a bond must be perfect in itself, and cannot be made by a reference to other breaches. The breach must show with certainty and precision that the plaintiff has a cause of action."

But there is another reason why the demurrer to the declaration was properly sustained. By the express terms of the bond, the undertaking of the defendant was to pay such losses as the plaintiff sustained by reason of the fraudulent and dishonest conduct of the cashier, amounting to larceny, etc., "which shall have been committed during said term, and discovered during said term or within three months after the expiration thereof," and it is nowhere alleged in the declaration *when* the alleged fraudulent acts of the cashier were discovered. *Fidelity & Casualty Co.* v. *Consolidated National Bank,* 71 Fed Rep. 116; *Am. Surety Co.* v. *Pauly,* 170 U. S. 133.

As all the breaches set out in the declaration are bad, it is not necessary to decide the further question discussed by counsel in the case, viz: whether when some of the breaches are bad and the others are good, a demurrer to the whole declaration can be sustained. It is said, however, in note 2 to 3rd *Ency. of Plea. & Prac.,* page 659, where a number of cases are cited, that "The several assignments of breach are analogous to several counts in a declaration," and that a general demurrer to the whole declaration will not be sustained if one of the several breaches assigned is sufficient.

For the reasons assigned, we must affirm the judgment below; but we shall remand the case under sec. 22 of Art. 5 of the Code (Rule 8, respecting appeals), to the end that, by proper amendment, the case may be tried upon its merits.

*Judgment affirmed and case remanded.*