## JOHN E. STANSBURY *v.* WARREN LEE LUTTRELL.

*Malicious Prosecution—Probable Cause—Larceny—By Hand of Another—Cutting and Removal of Trees.*

If there was probable and reasonable cause for a criminal prosecution, an action for malicious prosecution will not lie, although the prosecutor was actuated by malice, the accused was actually innocent, or he was acquitted.                    p. 556

If the facts and circumstances known to defendant at the time he began or participated in the prosecution were so convincing as of themselves to afford a cautious man reasonable

ground to believe plaintiff guilty of the crime charged, the defendant is not liable. p. 556

The real motive of the prosecutor, the actual innocence of the party charged, or his acquittal, is immaterial if the accused is not able to meet the burden of establishing by competent evidence the absence of probable cause. p. 556

The legal sufficiency of the facts and circumstances relied upon to constitute probable and reasonable cause is a question of law for the court, but if these are improbable, or are the subject of denial or controversy, their existence and truth are questions for the jury, and then probable cause is a mixed question of law and of fact. pp. 556, 557

For the purpose of determining whether, on the whole evidence, there was no legally sufficient testimony of the absence of probable cause, the appellate court will assume the truth of all the facts tending to support plaintiff's case, and consider such facts in connection with other facts appearing in the record which have been proved and not denied by plaintiff. p. 558

Prosecution of crimes being necessary for the peace and good order of society, a sound public policy requires that protection be accorded to the citizen who causes the prosecution of another in good faith and on reasonable grounds. p. 561

A master is criminally liable for the criminal acts of his servant in which he participated, or which were done by his authority. pp. 561, 562

That, at the trial of his servants for the larceny of logs, plaintiff admitted that, by his command, they had felled and cut up trees growing on a stranger's land, and, at a later time, removed the logs into which the trees were cut to plaintiff's saw mill, where they were made into lumber, of which plaintiff took part, showed probable cause for his prosecution for larceny.

pp. 561-563

If a trespasser, having felled trees on another's land and made logs therefrom, leaves the logs for a time on the land, so that the landowner acquires at least constructive possession of the logs in their new character of personalty, and the trespasser subsequently returns and carries away the logs, with the necessary felonious intent, he is guilty of larceny. pp. 562, 563

The unlawful felling or removing of trees from another's freehold, the larceny of the trees after severance, and the receiving of stolen trees, with knowledge of the theft, are different but analogous crimes, and the mere fact that an unquestionably criminal act may, through a slight difference of proof or of opinion, fall into one rather than another classification does not impose any additional liability on the prosecuting witness, if the grand jury chooses to charge the accused, by separate counts or indictments, in any or all of the probable forms of guilt.                                                 pp. 564, 565

It is not enough for the plaintiff in an action for malicious prosecution to show that he was proved innocent, but he must go further and prove that there was no reasonable and probable cause for belief in his guilt by defendant.          p. 565

*Decided March 22nd, 1927.*

Appeal from the Baltimore City Court (DAWKINS, J.).

Action by Warren Lee Luttrell against John E. Stansbury and others. From a judgment against the defendant named, he appeals. *Reversed.*

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Charles F. Harley* and *Michael James Manley,* for the appellant.

*Roland R. Marchant* and *Ridgely P. Melvin,* with whom were *Edward E. Hargest, Jr.,* and *Marchant & Kraus,* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The appellee, Warren Lee Luttrell, brought an action at law for malicious prosecution against the appellant, John E. Stansbury, and his co-defendants, H. Melvin Bull and Lester L. Stevens, for having falsely and maliciously charged, before a justice of the peace, the appellee with larceny of

three trees, and having procured the issuance of a warrant and the arrest of the appellee until he was released on bail, and thereafter his indictment for such crime, with the result that the appellee was acquitted. The outcome of this action was a judgment against the appellant, after the jury had been instructed that his co-defendants were not liable. On this appeal the single exception is to the rulings of the trial court on the prayers; and it is our judgment the only question requiring consideration is the rejected prayer to the effect that the evidence was legally insufficient to establish that the appellant had acted in the prosecution without probable and reasonable cause.

If there be probable and reasonable cause for the criminal prosecution at the time it was begun or participated in by the prosecutor, then an action for malicious prosecution will not lie, although the prosecutor may have been actuated by malice (*a*), the accused may have been actually innocent (*b*), or acquitted after trial (*c*). As probable cause is such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, as to warrant a cautious man in believing the party accused to be guilty, it follows that if the facts and circumstances known to the appellant at the time he began or participated in the prosecution were so convincing as of themselves to afford a cautious man reasonable ground to believe that the appellee was guilty of the crime charged, then the prosecutor would not be liable for procuring or assisting in the prosecution of the accused for such crime (*d*). Hence, the real motive of the prosecutor, the actual innocence of the party charged, or his acquittal, becomes immaterial, if the accused be not able to meet the burden (*e*) of establishing by competent evidence the absence of probable cause in his prosecution. The legal sufficiency of the facts and circumstances relied upon to constitute probable and reasonable cause is a question of law. If such facts and circumstances exist and are proven, without conflict or contradiction, by competent evidence, the question is one of law for the court, but if these facts and circumstances are

improbable or are the subject of denial or controversy, their existence and truth are questions for determination by the jury, and then probable cause is said to be a mixed question of law and of fact (*f*). These are familiar principles which find many exemplifications in the decisions. (*a*) *Goldstein v. Rau*, 147 Md. 6, 13; *Dorsey v. Winters*, 143 Md. 409; *Jordan v. Piano Co.*, 140 Md. 207, 213; *Bishop v. Frantz*, 125 Md. 183, 198; *Lasky v. Smith*, 115 Md. 370, 374, 375, 376; *Flickinger v. Wagner*, 46 Md. 580, 603; *Medcalfe v. Brooklyn Life Ins. Co.*, 45 Md. 198, 204. (*b*) *Jordan v. Piano Co.*, 140 Md. 207, 209, 210; *Chapman v. Nash*, 121 Md. 608, 612; *Moneyweight Co. v. McCormick*, 109 Md. 170, 183. (*c*) *Chapman v. Nash*, 121 Md. 608, 617; *Campbell v. Balto. & O. R. Co.*, 97 Md. 341, 345, 346; *Bowen v Tascoe*, 84 Md. 497, 499. (*d*) *Goldstein v. Rau*, 147 Md. 6, 13; *Dorsey v. Winters*, 143 Md. 399, 409; *Pessagno v. Keyes*, 143 Md. 437, 441, 442; *Jordan v. Piano Co.* 140 Md. 207, 209, 212, 213; *McNamara v. Pabst*, 137 Md. 468, 474, 475; *Bishop v. Frantz*, 125 Md. 183, 190; *Mertens v. Mueller*, 122 Md. 313, 320; *Moneyweight Co. v. McCormick*, 109 Md. 170, 183, 184; *Bowen v. Tascoe*, 84 Md. 497, 500; *Johns v. Marsh*, 52 Md. 323, 335; *Boyd v. Cross*, 35 Md. 194, 197; *Cooper v. Utterbach*, 37 Md. 282, 317; *Stansbury v. Fogle*, 37 Md. 369, 384. (*e*) *Goldstein v. Rau*, 147 Md. 6, 13; *Dorsey v. Winters*, 143 Md. 399, 408; *Jordan v. Piano Co.*, 140 Md. 207, 209; *Sappington v. Fairfax*, 135 Md. 186, 188; *Bishop v. Frantz*, 125 Md. 183, 190; *Chapman v. Nash*, 121 Md. 608, 611. (*f*) *Boyd v. Cross*, 35 Md. 196, 197; *Garvey v. Wayson*, 42 Md. 179, 187, 188; *Thelin v. Dorsey*, 59 Md. 539, 545, 555; *Medcalfe v. Brooklyn Life Ins. Co.*, 45 Md. 198, 204, 205; *Hooper v. Vernon*, 74 Md. 136, 139; *Central Ry. Co. v. Brewer*, 78 Md. 394; *Dorsey v. Winters*, 143 Md. 409; *Goldstein v. Rau*, 147 Md. 6, 13; *Jordan v. Piano Co.*, 140 Md. 210; *Chapman v. Nash*, 121 Md. 608, 617; *Lasky v. Smith*, 115 Md. 370, 376; *Campbell v. Balto. & O. R. Co.*, 97 Md. 341, 344, 346; *Bowen v.*

*Tascoe,* 84 Md. 497; *Central Ry. Co. v. Brewer,* 78 Md. 394, 408.

For the purpose of determining whether, on the whole evidence, there was no legally sufficient testimony of the absence of probable cause, the court will assume the truth of all the facts tending to support the plaintiff's case and consider such facts in connection with "such other facts appearing in the record which have been proved and not contradicted or denied by the plaintiff." *Chapman v. Nash,* 121 Md. 608, 610. The application of this rule to the case at bar presents these facts.

A large tract of land called "Pleasant Plains Farms" was owned in common by the Ellsworth Apartments, Inc., and the J. E. Stansbury Company, Inc., which had reserved practically all of the land fronting on the waters of the Chesapeake Bay and its tributaries for development and sale as building sites, and had rented the remainder for agricultural and dairying purposes to Harry W. Elliott, who had sublet the premises to one George T. Shelton. The lessee was bound by the lease to surrender the premises at the end of the term in as good order as at its beginning, and not to make any repairs other than those which, during the term, the lessors had first agreed could be made. These stipulations bound the sub-lessee, who, notwithstanding their inhibition and without the prior consent of the lessors, requested the appellee, who operated a saw mill which was located on a public road at a point less than half a mile from where the highway entered the mentioned tract, to cut and haul oak, chestnut and poplar timber from the land, saying that he needed the chestnut boards for hotbeds, the poplar for building purposes, and the oak for stable bottoms. Despite the appellee's knowledge that the sub-lessee Shelton was a tenant, the appellee went with two of his men to the farm and inquired where the timber was to be felled, and the tenant Shelton directed him to cut the growing timber back of the peach orchard. When the appellee asked the tenant to accompany him to the place of the cutting, the tenant did not comply with this request, saying that he was in a hurry to go to

Annapolis, and the appellee thereupon instructed his men, one of whom was familiar with the ground, to go to the place indicated and to do the cutting. The men, and some other fellow servants who later joined them in their labor by command of the appellee, felled the trees and cut all, except one oak which proved to be not sound, into logs of twelve, fourteen, and sixteen feet, which were lengths suitable for sawing for building purposes, and then hauled all except the unsound oak tree to the mill, where all but one log were sawed into boards which were divided equally between Shelton and the appellee. The men worked at cutting two days and cut down two red oaks, one pin oak and three or four poplars, which had all stood on the portion of the tract that was not included in the lease.

Shortly after the happening of these things, the appellant, the president of the corporation called the J. E. Stansbury Company, Inc., and H. Melvin Bull and Lester L. Stevens, officers of the other corporate tenant in common, heard that timber was being removed from the property. A visit to the tract confirmed the report, and an investigation was begun which implicated Shelton and two colored men as the guilty parties. The appellant went to the state's attorney of Anne Arundel County, and laid this information before him, and asked his advice. The state's attorney prepared an outline of the charge to be made, and instructed the appellant to go with it to a magistrate and there make the suggested information against the tenant Shelton and the two colored men. This the appellant did, and warrants for the arrest of the three parties were issued, but no charge was preferred against the appellee, and his name was not then mentioned in connection with the crime alleged. When the writs were put in the hands of the sheriff, he called up the appellee and informed him that he had warrants for the arrest of two of his laborers charged with stealing lumber off of Pleasant Plains Farms, and that the trial would be on the following Monday morning. This hearing was four or six weeks after the trees had been cut down and, although not summoned, the appellee attended because the charge was brought against his servants.

The state's attorney, the appellant, and his business associates, Bull and Stevens, the appellee, the accused men, and others, were present at the hearing. Shelton and the two colored men, who had been arrested, testified that the workmen of the appellee had gone upon the premises, cut down, removed, and sawed the trees by command of the appellee, who was with his men while at work on the premises on the second day. After this testimony, the appellee voluntarily and openly stated to the justice of the peace that what his men had thus done was by his direction. When the appellee made this declaration, which was an assumption of responsibility for the acts of his servants, the state's attorney suggested that the servants be discharged, except as witnesses for the State, which was done. An information against appellee was then prepared under the supervision of the state's attorney and sworn to by the appellant. As this information is not in the record, its contents are not known, but the warrant recited that, "upon information and oath" of appellant the appellee was "charged with larceny of timber and destruction of timber on Pleasant Plains Farms, 3rd District of Anne Arundel County. Timber cut in February, 1925"; and the magistrate's docket notes a charge of "larceny of timber and destruction of timber on Pleasant Plains Farm." The accused was asked if he desired to make a statement, and at the same time was warned that anything he might say would be used against him. He made no further statements, waived a hearing and gave security for his appearance at the April term of the Circuit Court for Anne Arundel County, wherein he was later twice indicted upon the testimony of the appellant and eight other witnesses, who were the same on each indictment.

The first indictment charged, in various forms, a violation of the statute making it a misdemeanor for any person to remove, take, cut, break, injure, or destroy any tree from the land or premises of another, or to cut, damage, or destroy any standing or growing timber or trees thereon, without the written consent first had and obtained of the owner thereof, or under his personal direction, unless it be the trimming of

trees under the supervision of the State Board of Forestry.
Code, art. 27, sec. 525. The second indictment was found
between two and three weeks later, and the crime charged in
the first count was the larceny of two oak logs and, under the
second count, of receiving the two logs knowing them to have
been stolen.   He was tried on the first indictment and ac-
quitted, and his plea of former jeopardy failing on demurrer,
went to trial on the second indictment and the verdict again
was not guilty.

The acquittals of the appellee supplied only one of the
elements necessary for a recovery by the appellee in his ac-
tion of malicious prosecution, and did not relieve him of the
necessity of establishing by legally sufficient evidence that
the defendant was responsible for the institution or continu-
ance of the original criminal prosecution against the plaintiff,
with malice, and without probable cause.   Prosecution for
crimes is necessary for the peace and good order of society,
and a sound public policy requires that protection be accorded
to the citizen who causes the prosecution of another in good
faith and on reasonable grounds.   *Chapman v. Nash,* 121
Md. 608, 616; *Boyd v. Cross,* 35 Md. 194, 199.

In the instant case, the appellee, who was neither a wit-
ness nor an accused, voluntarily admitted at a criminal in-
vestigation, in the presence of the presiding justice of the
peace, of the state's attorney, and of the appellant, that ap-
pellee's servants, who were under arrest and then having a
hearing at which they had testified, had, by his command
and on one day in his presence, shortly before wrongfully
felled and cut up for two consecutive days growing timber
upon a tract of land called "Pleasant Plains Farms," which
was the property of a stranger, and then, leaving on the
ground one unsound tree, later removed the logs into which
the other trees had been cut to appellee's saw mill, where
they were made into lumber, which was afterwards divided
between the appellee and Shelton.   By this declaration the
appellee confessed himself guilty of a crime, because a master
is criminally liable for the criminal acts of his servant in

which he participated or which were done by his direction. 1 *Bishop on Criminal Law* (9th Ed.), sec. 892 (3). The mere cutting or removing of the trees, without either the prior consent in writing of the owners of the land, or their personal direction, is made a misdemeanor by section 525 of article 27 of the Code. To constitute the graver charge of larceny, other elements than these must exist, since in larceny there must be the wrongful taking and carrying away of the chattels of another with a felonious intent to deprive the owner of his ownership therein. But, as was said in *Canton Bank v. American Bonding Company,* 111 Md. 41, at pages 45 and 46: "The taking, however, need not be by the hand of the accused, 'if he procures a person innocent of any felonious intent to take the goods for him his offence will be the same as if he had taken the goods himself.' 2 *Russell on Crimes,* 4; 1 *Bishop's New Crim. Law,* secs. 631 and 651; 1 *Wharton's Crim. Law,* sec. 207; 25 *Cyc.* 58; 18 *Am. & Eng. Ency. Law* (2nd Ed.), 468; *Hochheimer's Crimes and Crim. Proc.,* sec. 31; *Com. v. Barry,* 125 Mass. 390. Where the person who actually takes the property is also guilty, he who procured him to commit the larceny is, if present, guilty as principal, and if absent, is guilty as an accessory before the fact. *Hochheimer's Crimes & Crim. Proc.,* secs. 26-38; 25 *Cyc.* 58; 1 *Bishop's New Crim. Law,* sec. 651; 1 *Wharton's Crim. Law,* sec. 207." Code, art. 27, sec. 318; *Williams v. U. S. Fidelity Co.,* 105 Md. 490, 494.

If the unlawful severance of the trees from the freehold, and their carrying away by the trespasser, had been parts of one continuous transaction, there could have been no larceny at common law, for there would have been no time between the severance and the carrying away, during which it could have been said that the trees, in their new character as personalty because of the severance, had been in the actual or constructive possession of the owners; but here, after the trees were severed, they were cut into logs and remained on the place until they were carried away. The felling of the trees was on Friday and Saturday, and all the logs were not

carried away until the afternoon of the last day. There was, therefore, a time when the trespasser relinquished possession of some of the trees by leaving them on the land of the owners, and thereby the owners acquired constructive, if not actual, possession of the logs in their new character of personalty, and the return of the trespasser and his carrying away of the logs, with the necessary felonious intent, would have been larceny according to the modern authorities. *Hochheimer's Crim. Law* (2nd Ed.), sec. 357; 17 *R. C. L.*, *"Larceny,"* sec. 36, pp. 33-34; *Comm. v. Steimling,* 156 Pa. St. 400.

In connection with the confession by the appellee that the wrongful acts of his laborers had been done pursuant to his commands, the appellant had heard the sub-lessee Shelton swear at the hearing that Shelton had not asked the appellee to cut the oak trees, nor had he ever received any share after they had been converted into boards; and it was the uncontradicted evidence of the appellant that before the hearing he had gone to the saw mill, where the servant of the appellee in charge had, upon appellant's inquiry, denied that any timber from "Pleasant Plains Farms," had been received or sawed at the mill. Under these facts and the circumstances and the inferences warranted by them, the appellant had probable and reasonable cause to justify a sensible and cautious man in the belief, not only that the appellee was guilty of the offence of unlawfully destroying and removing trees, but also of the larceny of trees, after they had been converted into personalty by severance.

The party who knows or suspects a crime to have been committed generally goes before a justice of the peace and gives the magistrate his information, and then the magistrate swears the accuser, and sets down the substance of the facts as stated in what is known as an information, which is later read to the informer, who confirms it by his signature. Upon this information, the justice usually issues his summons or warrant, according to the magnitude of the charge or the apparent weight of the evidence by which it is supported.

*Latrobe's Justice,* secs. 1408, 1409. The proceedings here were not of this nature, as the information in the present case was made at the hearing of the parties originally charged, and as a result of their testimony and of appellee's admission of responsibility for the acts of his servants. The information is not in the record, but if it be assumed that the warrant of the magistrate accurately followed the infor mation, the appellant charged the appellee "with larceny of timber and destruction of timber on Pleasant Plains Farm, 3rd District of Anne Arundel County. Timber cut in Feb ruary, 1925." The accusation is inartificially drawn, and is evidently intended to charge but one offense, as is indicated by the fact that there were but one information, one warrant, and one case against the accused before the magistrate. The accused waived a hearing, and was required to give bail for his appearance at court, in that one case or charge. The grand jury, however, indicted the accused for the unlawful destruction and removal of oak and poplar trees and timber under the statute, and by a second indictment charged him with the larceny of two oak logs, and with receiving, with knowledge, two stolen oak logs. There is nothing on the record to suggest that the appellant took any affirmative ac tion whereby his original single accusation was split by the grand jury into two separate criminal charges. The fact that he, with eight others, have their names indorsed as wit nesses on the indictment is not sufficient to subject him with any liability for the action of the grand jury. It was not shown that he appeared voluntarily before the grand jury nor that he made any attempt to shape its course. The two indictments were the official acts of the grand jury in the dis charge of its duty, and reflected its independent judgment on the legal effect of the collective testimony of the witnesses appearing separately before that body. The unlawful cut ting down or removing trees from a freehold of another, the larceny of trees after a completed severance from the free hold, and the receiving of stolen trees, with knowledge of the theft, are different, but analogous, crimes, and the mere fact that an unquestionably criminal act may, through a slight

difference in proof or of opinion, fall into one rather than the other of these classifications does not impose any additional liability on the prosecuting witness, if the grand jury, in the exercise of its judgment, should charge the accused, by separate counts or indictments, in any or all of the probable form of guilt the evidence might at trial present the crime. *Jordan v. Piano Co.,* 140 Md. 207, 213. See Code, art. 27, secs. 525, 318, 320, 322, 325, 329, 331.

It is true that the appellee was acquitted, but the establishment of his innocence is not inconsistent with the existence of reasonable and probable cause for belief in his guilt by the appellant at the beginning of the prosecution. So, it is not enough for the plaintiff to show that he was proven innocent. He must go further, and prove that there was no reasonable and probable cause for the prosecutor to have believed that he was guilty. *Supra.* The reason for this is that criminal proceedings are ordinarily privileged, since every one is morally bound to prosecute a criminal whose offense comes within his knowledge or reasonable and probable ground of suspicion. It is only in the abuse of this duty that the prosecutor becomes liable in damages to the person injured. Good sense and sound considerations of public policy protect the prosecutor, where, as in this case, the circumstances known to him at the time of the institution of the proceedings are shown, without contradiction, to have been such as to lead a reasonable person acting in good faith to the belief that the person accused was guilty. Because of his failure to establish a want of probable cause in his prosecution by the appellant, the case should have been withdrawn from the jury and appellant's prayer to that effect should have been granted.

*Judgment reversed, with costs, without awarding a new trial.*