## Case No. 9,926.

### MUNNS v. DE NEMOURS et al.

[3 Wash. C. C. 31;[1] 4 Hall, Law J. 102; 1 Am. Lead. Cas. 200.]

Circuit Court, D. Pennsylvania. May, 1811.

MALICIOUS PROSECUTION — MALICE — PROBABLE CAUSE—REASONABLE GROUND OF SUSPICION— EVIDENCE — SECONDARY— PAPERS—SUBSCRIBING WITNESS—DEPOSITION.

1. Action for damages, for a malicious prosecution—1. In charging the plaintiff with having stolen certain articles used in the manufacture of gunpowder, and causing the plaintiff to be imprisoned thereon. 2. In bringing a civil action against the plaintiff, and demanding excessive bail. 3. In causing the plaintiff to be indicted in the state of Delaware, as the receiver of certain articles used in making gunpowder, knowing them to have been stolen; all of which charges were alleged to have been maliciously made, and without probable cause.

2. Of the malice of a charge which is the ground of a prosecution for a crime, the jury are exclusively the judges.

[Cited in Gee v. Culver, 12 Or. 228, 6 Pac. 776; Vinal v. Core, 18 W. Va. 27.]

3. Probable cause for such a prosecution, is a mixed question of law and fact. What circumstances are sufficient to prove a probable cause. must be decided by the court; but to the jury it must be left to decide, whether these circumstances are proved by credible testimony.

[Cited in brief in Beach v. Wheeler, 30 Pa. St. 70. Cited in Vinal v. Core, 18 W. Va. 35; Casperson v. Sproule, 39 Mo. 40. Cited in brief in Hill v. Palm, 38 Mo. 17.]

4. Probable cause, is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves. to warrant a cautious man in believing that the accused was guilty.

[Cited in Wilmarth v. Mountford. Case No. 17,774; U. S. v. The Recorder, Id. 16.130; Stacey v. Emery, 97 U. S. 645; Sanders v. Palmer. 5 C. C. A. 77. 55 Fed. 220; Re Ezeta, 62 Fed. 981.]

[Cited in Ash v. Marlow, 20 Ohio, 129; Boyd v. Mendenhall, 53 Minn. 278, 55 N. W. 45; Casperson v. Sproule, 39 Mo. 40; Coleman v. Heurich, 2 D. C. 206; Cooper v. Hart, 147 Pa. St. 597, 23 Atl. 833; Hooper v. Vernon, 74 Md. 138, 21 Atl. 557. Cited in brief in Kidder v. Parkhurst, 85 Mass. (3 Allen) 395. Cited in Mitchell v. Wall, 111 Mass. 498; Richey v. McBean, 17 Ill. 65;

Rosenkrans v. Barker, 115 Ill. 333, 3 N. E. 93; Scott v. Shelor, 28 Grat. 905; Spengler v. Davy, 15 Grat. 388; Stone v. Stevens, 12 Conn. 225–232. Cited in brief in Vansickle v. Brown, 68 Mo. 630. Cited in Vinal v. Core, 18 W. Va. 29.]

5. The declaration stated, the writ on which the plaintiff was held to bail in $6000, to have been returnable the first Monday in December, 1809; whereas it was returnable the first Monday in March, 1809: Held, that the record does not support the declaration, and cannot be given in evidence to support the count in the declaration for damages for the civil action, and holding to bail, but it may be used as evidence of malice. on the other counts.

[Cited in Stone v. Lawrence, Case No. 13,- 484.]

6. A letter from P. which went to show the plaintiff had not seduced him from the service of the defendants, was not admitted in evidence, as the testimony of P. might have been obtained.

7. A joint commission to take a deposition must be executed by all the commissioners, although the commissioner named by the party against whom the witness is offered, after proceeding some length in the examination, withdrew, and refused to complete it.

8. Papers taken from the person of the party, by the alderman before whom he was brought upon a criminal charge, the parties making the charge having no agency in taking the papers, may be read in evidence by those who have possession of them, having received them from the alderman.

9. The subscribing witness to a paper, who stated that he was called in to sign the paper as a witness, but did not see the parties execute, or acknowledge it, although they both told him it was their agreement, was admitted to testify.

[Cited in Dooley v. The Neptune Car, Case No. 3,997.]

[10. Cited in Stacey v. Emery, 97 U. S. 645, to the point that if malice is proved, yet if probable cause exists, there is no liability. Malice and want of probable cause must both exist.]

[11. Cited in Sanders v. Palmer. 5 C. C. A. 77, 55 Fed. 220, to the point that, however malicious may have been the private motives of the defendants in prosecuting the plaintiff upon the criminal charge, they were protected in doing so, provided there was probable cause to believe him guilty of the offense.]

[12. Cited in Scotten v. Longfellow, 40 Ind. 30, to the point that, in order for the advice of counsel to afford protection, it must be given upon a full and true statement of the facts within the knowledge of the person seeking the advice, and must be acted upon in good faith, for an honest purpose.]

[13. Cited in Vinal v. Core, 18 W. Va. 57, to the point that if in the transaction itself, out of which the charge of felony arose, the plaintiff was guilty of a gross fraud, though such fraud could not justify or excuse the defendants. unless they had probable cause, or were entirely free from malice or improper motives in so doing, still the damage to the plaintiff's reputation would thereby be much diminished, and he could set up no claim to punitive damages.]

[This action was first brought in the state court. It was removed by petition into this court, and was first heard upon application to have the cause docketed. Case No. 9,931.]

This was an action [against Dupont de Nemours and Peter Bauduy] for a malicious

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the supreme court of the United States. under the supervision of Richard Peters, Jr., Esq.]

prosecution—1. In charging the plaintiff before Alderman Keppele in Philadelphia, with having stolen a brass pounder, and three draughts of machinery; and causing the plaintiff to be imprisoned. 2. In bringing a civil action, and demanding excessive bail. 3. Causing the plaintiff to be indicted in the state of Delaware, as the receiver of five pieces of parchment sieves, knowing them to have been stolen. All charged to have been done maliciously, and without probable cause.

WASHINGTON, Circuit Justice (charging jury). The plaintiff, having some skill in the mystery of making gunpowder, engaged with Brown, Page & Co. of Virginia, in November or December, 1808, to superintend a manufactory of that article, which they were about to establish near to Richmond; and with a view to obtain more complete information of the art than he then possessed, or to procure workmen, or certain parts of machinery, he came to the northward early in December. On the 9th, he put up at an inn called the Buck, within half a mile, or thereabouts, of the powder manufactory of the defendants, on the Brandywine [about four or five miles from Wilmington, in Delaware].[2] The powder of this manufactory had obtained great celebrity, and commanded the market, in consequence of the skill employed in making it, and probably from the use of certain parts of the machinery employed, particularly the parchment sieves. The plaintiff, immediately after his arrival at the Buck, opened a correspondence with some of the defendants' workmen, and had frequent interviews with them at the tavern; at which times he made them considerable offers to induce them to leave the service of the defendants, and to go to the manufactory at Richmond. He also made them pecuniary offers, to procure for him patterns or models of the different parts of the machinery used by the defendants, and particularly to procure for him a sight of one of the brass pounders, or a pattern of it. The defendants, hearing of the plaintiff's conduct, called upon him at the tavern; and after offering considerable violence to his person, ordered him to quit the neighbourhood, which he did on the 14th. It is proper to remark, that pains were taken by the defendants to preserve the secrets of their art, and that strangers were not, without leave, admitted into the factory. Shortly after the plaintiff had left the neighbourhood, two of the defendants' workmen secretly went off, and at the same time, one of the brass pounders was missing. The plaintiff came to Philadelphia, and a few days afterwards, the defendants arrived here. On the 22d, they applied to Alderman Keppele, for the warrant stated in the first count of the declaration, and, on their oath, valued the property charged to have been stolen, at 10,000 dollars. The officer to whom the warrant was

delivered, met with the plaintiff the next day, and inquired of him, if his name was not Munns? The plaintiff denied it, and assumed a fictitious name. The officer, however, being satisfied that he answered the description, carried him to the house of the high constable, where he acknowledged himself; and after he was informed of the nature of the charge against him, he put to the officer this question: "If I was in the company of one who had stolen certain articles, am I guilty?" The officer declined giving an answer, and conducted his prisoner to the office of Mr. Keppele. There he was examined, and by order of the alderman, his person was searched; when certain letters were found in his pocket-book, from him to Brown, Page & Co., and from them to him; by which it appeared, that the plaintiff, previous to his arrest, knew that the defendants were in Philadelphia, and suspected that they were following his steps—that he had obtained all the information he wanted, to enable the Richmond, to equal the Brandywine powder manufactory; and that some of the hands, belonging to the defendants, had left them and gone to Richmond. The alderman committed the plaintiff to the jail of Philadelphia, having required bail to the amount of 15,000 dollars, which the plaintiff could not give. On the 27th, the plaintiff was carried before Judge Rush, on a habeas corpus, who reduced the bail to 1000 dollars; but this he could not get, and he was again committed. On the 29th, the defendants sued out the writ mentioned in the second count, for seducing the defendants' workmen and servants, and demanded bail in 6000 dollars, which, on citation before Judge Rush, was reduced to 600 dollars. The defendants, having obtained from the governor of Delaware, a requisition to the governor of Pennsylvania, for the removal of the plaintiff to the former state, as a fugitive from justice, he was, upon the warrant of the governor of Pennsylvania. removed, on the 6th of January, to the jail at New-Castle. The defendants discontinued their civil suit in Pennsylvania, and renewed it in Delaware, laying their damages at 4000 dollars. On the 4th of February, the plaintiff, upon a habeas corpus, obtained from the chief justice of Delaware, was discharged from confinement under the criminal charge, upon the ground, that he ought to have been committed under a warrant from some magistrate of that state, and not under the warrant of the governor of Pennsylvania, which only authorized his removal [from the one state to the other].[2] But he was remanded [by the chief justice of Delaware][2] to answer [in the bail of 2,000 dollars][2] to the civil action. Thinking now to correct this error, the defendants obtained a second warrant against the plaintiff, from a justice of the peace of Delaware; charging him with a suspicion of having stolen a brass

stamper, and sundry other articles, of the value of forty dollars, or having caused the same to be stolen. It is admitted that the stamper is the same instrument with the pounder, mentioned in the warrant issued by Mr. Keppele. On the 11th of March, the plaintiff was again discharged upon a habeas corpus, on the ground, that by the law of Delaware no person can be committed by a judge or justice, who has once been discharged upon a habeas corpus from confinement, on account of the same offence. In May, a bill was sent to the grand jury, charging the plaintiff as the receiver of five pieces of parchment sieves, the property of the defendants, knowing them to be stolen. The jury found the bill, and the trial being postponed, upon the motion of the plaintiff, until December, (during all which time he remained in confinement,) upon a trial before the petit jury, the defendant was found not guilty. The attorney general, then moved the court to certify probable cause, in order to compel the plaintiff, Munns, to pay the costs of that prosecution, under the constitution of the state. But the counsel for Munns agreed that his client should pay the costs, if the court would not grant the certificate; in consequence of which, the certificate was not granted.

The balance of the evidence, except such parts of it as will be more particularly noticed hereafter, relates to the plaintiff's sufferings, which, it must be acknowledged, were very great. But as to these, it is to be observed, that except where they were produced by the immediate agency or interposition of the defendants, no inference of malice can be drawn from them, to charge the defendants, although they may be considered in estimating the damages, if the plaintiff has made out such a case as to entitle him to a verdict for anything. For the assault and battery at the Buck, the defendants have been indicted and punished, by a fine of fifteen dollars each, so that that transaction is no otherwise to have influence on your minds, than as it may become an item in the account of malice charged upon the defendants. So, too, the high value affixed to the articles charged to have been stolen, in the Philadelphia warrant, and the low value fixed to the same articles, in the Delaware warrant, and the amount of damages claimed in the civil suit, brought in Pennsylvania, are only to be considered in relation to the question of malice. The question, then, is, are the defendants liable for damages, on account of the warrant issued by Mr. Keppele, and the consequent confinement of the plaintiff under it? and 2d, are they liable in consequence of the indictment in Delaware, and the injuries to which it exposed the plaintiff?

The question upon which this cause must be decided, is not whether the plaintiff has suffered from a charge of which the defendants were the authors, and which was not founded in truth, but whether the charge was made maliciously, and without probable cause. In trials of actions of this nature, it is of infinite consequence to mark with precision, the line to which the law will justify the defendant in going, and will punish him if he goes beyond it. On the one hand, public justice and public security require, that offenders against the laws should be brought to trial, and to punishment, if their guilt be established. Courts and juries, and the law officers, whose duty it is to conduct the prosecutions of public offenders, must in most instances, if not in all, proceed upon the information of individuals; and if these actions are too much encouraged,—if the informer acts upon his own responsibility, and is bound to make good his charge at all events, under the penalty of responding in damages to the accused, few will be found bold enough, at so great a risk, to endeavour to promote the public good. The informer can seldom have a full view of the whole ground, and must expect to be frequently disappointed, by evidence which the accused only can furnish. Even if he be possessed of the whole evidence, he may err in judgment; and in many instances a jury may acquit, where to his mind the proofs of guilt were complete. It is not always the fate of those to command success, who deserve it. On the other hand, the rights of individuals are not to be lightly sported with; and he who invades them, ought to take care that he acts from pure motives, and with reasonable caution. For the integrity of his own conduct, he must be responsible; and his sincerity must be judged of by others, from the circumstances under which he acted. If, without probable cause, he has inculpated another, and subjected him to injury, in his person, character, or estate, it is fair to suspect the purity of his motives, and the jury are warranted in presuming malice. But though malice should be proved, yet, if the accusation appear to have been founded upon probable ground of suspicion, he is excused by the law. Both must be established against him; viz. malice, and the want of probable cause. Of the former, the jury are exclusively the judges—the latter, is a mixed question of fact and law. What circumstances are sufficient to prove a probable cause, must be judged of, and decided by the court. But to the jury it must be referred, whether the circumstances which amount to probable cause, are proved by credible testimony or not. What, then, is the meaning of the term "probable cause?" We answer, a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief, that the person accused is guilty of the offence with which he is charged. What, then, were the grounds of suspicion, upon which the defendants acted in relation to the warrant of Alderman Keppele, under which the plaintiff was apprehended and committed? The plaintiff was a stranger, and his character totally unknown to the defendants.

He took up his abode at an obscure tavern, in the neighbourhood of the defendants' manufactory, where he contrived to procure frequent interviews with the workmen employed there, for the purpose of seducing them from their engagements with the defendants, and of obtaining from them a knowledge of the machinery and process, used in the manufacture of gunpowder, which the defendants had carefully endeavoured to keep secret. He offers one of them in particular, Bowman, a reward for bringing to him a brass pounder, or a pattern of it. The pounder was brought, was afterwards concealed, and about the same time, Bowman secretly absconded. The plaintiff came to Philadelphia, and although he soon afterwards knew that the defendants were also in this city, and suspected that they were following his footsteps, as he expresses it in a letter to his employers, yet, when arrested by the constable, he denied his name, and put to that officer a question, by no means calculated to allay the suspicions which existed against him. The letters taken from him by the alderman, developed fully the objects which had carried him to the neighbourhood of the defendants, and contain allusions to the article of machinery which the defendants had missed.

Called upon to declare an opinion, whether these circumstances, if proved to your satisfaction, afforded a probable cause for the prosecution in relation to the brass pounder, the court feels no hesitation in saying, that they did; and still further, that the plaintiff has no person but himself to blame for that prosecution, and the sufferings it has produced. A man may undesignedly and innocently become the object of suspicion, and of unmerited, though justifiable prosecution. In such a case, he may with great propriety call upon his accuser to acquit himself, by strong evidence, from the charge of rashness and malevolence, before he can claim to be excused from the consequences of his conduct. But, if he has intentionally acted in such a manner as to connect himself with the supposed guilt, and has, in fact, participated in it, shall he be permitted afterwards to complain that he had become an object of suspicion, and to claim the assistance of the law, to compensate him for the losses to which he had thus exposed himself? In this case, the brass pounder was taken and carried away, at the instigation of the plaintiff; was in his possession, as he afterwards acknowledged; and was then concealed by the person who took it, and who afterwards ran off:—and does it now lie in the plaintiff's mouth to say, that the defendants had not probable cause for suspecting him as the felon? But, it is said, that still there is no proof, that a larceny was committed by any person; and the proof of this, is essential to the defence. Without determining conclusively upon the soundness of the doctrine contended for, we must be permitted to express the hesitation of the court, in approv-

ing it. It would seem to demolish the whole ground of defence, allowed to the defendant in this action; if, notwithstanding the strongest circumstances of guilt, the motives of the action should, upon a full examination of the evidence to be furnished by the person suspected, turn out differently from what they appeared;—if probable cause shall excuse, in relation to the person suspected, and yet afford no protection as to the offence supposed to have been committed. But, it is by no means to be admitted that a larceny was not committed, in relation to the brass pounder. Baron Eyre defines larceny to be "the wrongful taking of goods, with intent to spoil the owner causa lucri"; and what are the facts of this case? Bowman secretly took, and carried away this instrument, for a reward promised him by the plaintiff, as is proved in the cause; and he concealed, or otherwise disposed of it, so that it was lost to the owner. Whether his intention was to spoil the owner, or to convert the article to his own use, would be a proper subject of inquiry with a jury, upon all the circumstances of the case. But, it is proved by two witnesses, that the plaintiff afterwards acknowledged that Bowman had stolen the pounder; and whether, in technical language, he had done so or not, the plaintiff cannot, in this action, make it an objection, that in point of strict law, a larceny was not committed. As to the three draughts of machinery, charged to have been stolen by the plaintiff, it must be admitted, that the defendants proceeded not only without probable cause, but without any cause at all. It does not appear, by the evidence, that the defendants ever possessed such draughts, and consequently, they could not have been deprived of them. This charge, (which is certainly unfounded,) being connected in the same warrant with another which was founded, may or may not have produced injury to the plaintiff; and if in your opinion it did so, and was maliciously made a ground of prosecution, the plaintiff is entitled to a verdict on that account, for such damages as you may think right.

We shall notice the warrant taken out by the defendants in Delaware, merely for the purpose of observing, that it is not made a distinct ground of charge against the defendants, and is only relied upon as a circumstance to prove malice. Of course, no damages could be given on account of that prosecution, even if it had been made without probable cause; and if the defendants had probable cause for obtaining the first warrant, the grounds of suspicion had received additional strength, before the second was granted; the plaintiff having previously acknowledged that the pounder, or stamper, (which means the same thing,) had been stolen by Bowman, brought to him, and afterwards concealed.

2. The second ground of complaint is, the indictment against the plaintiff in Delaware, for having received five pieces of parchment,

four of them perforated with holes, knowing them to have been stolen. How stands the evidence, in relation to these articles? It is in full proof, if the witnesses are believed, that Peebles, one of the workmen in the defendants' manufactory, by the plaintiff's procurement, cut from the parchment sieves belonging to the defendants, without their knowledge or consent, a number of pieces of different sizes, which the plaintiff afterwards had in his possession, and which were produced at his trial. And if this evidence required any support, the finding of the bill of indictment, and the agreement of the plaintiff's counsel to pay the costs of that prosecution, which the law excused him from doing, unless a certificate of probable cause was granted, are strong indeed upon the point of probable cause.

Upon the whole, if the jury think that the facts above stated are proved, the plaintiff is not entitled to a verdict, as to the two charges which respect the pounder and sieves; because, though he should have proved malice to your satisfaction, the defendants have justified themselves, by proving probable cause for those prosecutions. And as to the three draughts of machinery, you are to decide, whether that charge was maliciously made, and was productive of injury to the plaintiff.

The plaintiff suffered a nonsuit.

NOTE. One of the counts in the declaration, is for maliciously bringing a civil action against the plaintiff in Pennsylvania, and holding him to bail in 6000 dollars; to support which, the plaintiff offered the record, in which the writ appeared to be returnable to 1st March, 1809, whereas, the declaration stated it to be returnable the first Monday in December, 1809. BY THE COURT. The evidence does not support the declaration; and, therefore, the record cannot be read, in order to support a claim for damages under this count. But it may be used as evidence of malice, in support of the other counts.

2. THE COURT refused to suffer a letter written by Peebles to Brown, Page & Co., to be read, to prove that the writer had offered his services to Brown, Page & Co., and thus to repel the charge, that he was seduced by the plaintiff; because it is not the best evidence, since Peebles might have been examined under a commission.

3. A commission to Delaware, was directed to two commissioners, nominated by the plaintiff, and to two or three nominated by the defendants. They met to execute the commission, and after having proceeded some length in the examination, the defendants' commissioners withdrew, and refused to go on with the execution of it. The other two executed and returned the commission. BY THE COURT. The commission being joint, it could not be executed by two only of the commissioners, although the others refused to act.

4. The papers taken from the person of the plaintiff by the alderman, without the request or interference of the defendants, and which were used on the trial of the indictment in Delaware, were offered in evidence by the defendants, and objected to. BY THE COURT. We give no opinion as to the propriety of the conduct of the alderman, in taking these letters from the person of the plaintiff. But, having been taken, and being in the defendants' possession, there is no reason why they should not use them.

5. The subscribing witness to an agreement between the plaintiff and Bowman, stated that he was called into the room to sign the paper as a witness, but did not see them execute the same, or acknowledge that they had done so; but they both told him it was their agreement. This was objected to, but admitted by THE COURT.

[See Case No. 9,931.]