## SADIE C. BISHOP

### *vs.*

## F. BERNARD FRANTZ.

*Malicious prosecution: want of probable cause; technical malice; burden of proof; advice of counsel; when no defense.*

As used in relation to the question of malicious prosecution, the phrase "probable cause" means such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the party accused to be guilty.                                          p. 190

The term "malice" in this connection does not mean spite or hatred, but merely *"malus animus,"* or improper and indirect motives.                                          p. 196

In such cases the plaintiff must prove that the prosecution was both malicious and without probable cause, to entitle a recovery; but the existence of malice, is a question of fact for the jury, under all the facts of the case.                  p. 190

The jury should be instructed hypothetically as to what constitutes probable cause or want of it, leaving to them to find the facts embraced in the hypothesis.                  p. 191

If a prosecution is instituted upon weak and unsubstantial grounds, for the purpose of annoyance, or of frightening and coercing the party prosecuted into a settlement of a demand, the surrender of goods, or the accomplishment of any other object than the vindication of public justice, the party who puts the criminal law in motion, under such circumstances, lays himself open to the charge of being actuated by malice.  p. 196

*Decided January 26th, 1915.*

Appeal from the Circuit Court for Washington County. (KEEDY and HENDERSON, JJ.)

The following are the prayers of the respective parties, and the action of the trial Court upon the same:

*Pltff.'s 1st Prayer*—The plaintiff prays the Court to instruct the jury that if they find from the evidence that on or about the 4th day of November, A. D. 1913, the plaintiff was arrested on a warrant and brought to the office of J. H. Ferguson, a justice of the peace, and that he was thereafter released on bail, after having prayed a jury trial, if the jury shall so find, and was held to await the action of the next term of the Circuit Court for Washington County, and further find that Mr. Spessard, the attorney for the said Sadie C. Bishop and her legal adviser in connection with her action in procuring the warrant for the arrest of the plaintiff, offered in evidence, with authority from· the said Sadie C. Bishop, or acting at her instance informed the State's Attorney for Washington County, that she did not desire any further prosecution of said case, and that by reason thereof, if the jury so find, the said State's Attorney did not prosecute said case in the Circuit Court for Washington County (and that by the action of the State's Attorney for Washington, the prosecution of the plaintiff on said warrant was at an end) if the jury shall so find, and shall further find that said warrant was issued at the instance of and on the oath of the defendant and that said defendant procured the arrest and prosecution of the plaintiff before the said justice of the peace under such circumstances as would not have induced a reasonable and· cautious person to have undertaken a prosecution from public motives, then there was no probable cause for said prosecution, and the jury may infer in the absence of sufficient proof to satisfy them to the contrary, that said prosecution was malicious in law, and their verdict may be for the plaintiff, unless the jury find the facts set forth in the defendant' third or fourth prayer. And if the jury find the facts set forth in either said third or fourth prayer of the

defendant, then the plaintiff is not entitled to recover and their verdict must be for the defendant even though the jury may find the facts first above set forth. (*Granted as modified.*)

*Pltff.'s 2nd Prayer*—The plaintiff prays the Court to instruct the jury that if they shall find a verdict for the plaintiff, they are at liberty to take into consideration all the circumstances of the case and award such damages as will not only compensate the plaintiff for the wrong and indignity he has sustained in consequence of the defendant's wrongful acts, but may also award exemplary or punitive damages as a punishment to the defendant for such wrongful acts. (*Granted.*)

---

*Deft.'s 1st Prayer*—The defendant prays the Court to instruct the jury that under the pleadings in this cause there is no evidence in this cause legally sufficient to entitle the plaintiff to recover. (*Rejected.*)

*Deft.'s 2nd Prayer*—The defendant prays the Court to instruct the jury that there is no evidence in this cause legally sufficient to entitle the plaintiff to recover. (*Rejected.*)

*Deft.'s 3rd Prayer*—The defendant prays the Court to instruct the jury that if they find from the evidence in this cause that the plaintiff and defendant entered into the agreement offered in evidence and that after the plaintiff entered upon the performance of his duties under said agreement, if the jury so find, the defendant notified the plaintiff either orally or in writing or both that she discharged him from her employment and further find that thereafter the plaintiff against the order and notice of the defendant, if the jury so find, continued to remain on the property testified to and to go upon the fields of defendant's principal mentioned in said agreement and further find that the defendant upon consultation with her counsel disclosed unto him all the facts and.

circumstances surrounding the employment and hiring of plaintiff and their relations to each other and concealed noth-·ing and that said attorney advised the issuing of the warrant offered in evidence and that defendant believed said advice to be sound, and in good faith acted thereupon without malice, ·then there was probable cause for the issuing of said warrant and the arrest of the plaintiff, if the jury so find, and their verdict must be for the defendant. ·(*Granted.*)

· *Deft.'s 4th Prayer*—The defendant prays ·the Court to· instruct the jury that if they shall find that the· defendant, in reference to the institution and prosecution of the charge complained of, acted *bona fide* and ·without malice, under the · professional advice and direction of her counsel, Mr. Spescard, that she then and there stated to her counsel all the material facts that she knew at the time were capable of proof, or which by the exercise of reasonable diligence she could have ascertained,· and concealed nothing material, that she then believed said advice ·to be sound, then she ·is not liable,· and the plaintiff cannot recover in this action, even though Mr. Spessard's advice may not have been sound, and although, but for such advice the defendant would have had no ·probabel ·cause for her action. ·(*Granted.*)

*Deft.'s 5th Prayer*—The defendant prays the Court to ·instruct the jury that there is no evidence in this cause legally sufficient to establish malice and want of probable cause upon the part of· the defendant against the plaintiff in the arrest and prosecution of ·the plaintiff as set forth in the declaration; and their verdict must be for the defendant. (*Rejected.*)

·*Deft.'s 6th Prayer*—The defendant prays the Court to· instruct the jury that there is no evidence in this case legally sufficient to entitle the plaintiff to recover. (*Rejected.*) ·

The facts are stated in the opinion of the Court.

The cause was argued ·before BOYD, C. J., BRISCOE, THOMAS, PATTISON, ·URNER, STOCKRBIDGE and CONSTABLE,· JJ.

*Harvey R. Spessard* (with whom was *Wagaman and Waga-man* on the brief), for the appellant.

*D. A. Wolfinger* (with *Hartle* and *Wolfinger* on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is an action for malicious prosecution brought on the 14th day of January, 1914, by the appellee, the plaintiff below against the appellant, the defendant, in the Circuit Court for Washington County.

The plaintiff recovered a verdict of $1,000, but upon a remittitur, the verdict of the jury was reduced to the sum of five hundred dollars, and from a judgment in favor of the plaintiff for the last named amount, the defendant has appealed.

The questions to be considered by us are presented by a single exception and that is, to the ruling of the Court below in the course of the trial, on the prayers.

The plaintiff's first and second prayers were granted, with a modification by the Court of the first prayer.

The defendant's first, second, fifth and sixth prayers were refused. The third was granted, as modified by the Court, and the fourth was also granted.

The facts of the case, so far as they may be necessary for the purposes of this appeal, briefly stated, are these:

Dr. E. Tracey Bishop, owned a fruit farm near Smithsburg, in Washington County, and during the year, 1913, this farm was under the care and management of his daughter, the defendant below, and the appellant here, as agent.

On the 13th day of January, 1913, as agent for her father, she entered into a written contract with the appellee, whereby she agreed to employ and engage him "to cultivate and care for in a scientific and farm like manner" all the lands mentioned therein, "including the orchard and workable lands about the home place, on the Waynesboro road." In consideration of the services specified and required by the

contract she was to pay him the sum of $500 for one year,
in monthly payments of not less than fifteen dollars per
month.    The year's service was to begin with April, 1913,
and end one year thereafter.    The contract contains a pro-
vision that "each party agrees to give not less than two
months' notice."    She was to give him a house, garden and
lot, the possession of which was to be surrendered to the
owner at once upon expiration or cancellation of the agree-
ment.    There were certain restrictions, limitations and other
requirements imposed by the contract which need not be set
out in detail here.

On November 3rd, 1913, after repeated differences and
contentions between the parties, and after seeking the advice
of her attorney, the following notice was given the plaintiff
by the defendant:

> "I hereby notify you that I no longer desire your
> services and you shall consider yourself discharged
> from my employment, as I have heretofore notified you
> orally.    And I further give you notice that you shall
> cease to go upon any of the fields of the farm where
> you are now living; and that you shall move your
> property and yourself from said farm and premises
> within ten days from this date."

On the 4th of November, 1913, the defendant swore out a
warrant for his arrest for trespass under the Act of 1900,
Chapter 66, and upon being arrested he was brought before
J. H. Ferguson one of the Justices of the Peace of the State,
in and for Washington County, where upon praying a jury
trial, and giving bond, he was released for trial, before the
Circuit Court of Washington County.

Subsequently, Mr. Harvey R. Spessard, attorney for the
defendant requested the State's Attorney for Washington
County not to prosecute the case, and it was either dismissed
or abandoned.

. Afterwards, on the 14th of January, 1914, this suit was
instituted by the plaintiff against the defendant, to recover

damages for the arrest and malicious prosecution of the appellee, under the warrant issued by the Justice of the Peace, as set out in the declaration filed in the case.

The rules of law, upon cases of this character, have been so clearly and carefully stated, in the recent decisions of this Court, wherein the former cases, upon the subject of malicious prosecutions have been fully reviewed and adopted, that it would answer no good purpose to prolong this opinion, by an extended review of them.

A citation of a few of the cases, will be found sufficient, for the conclusion, we have reached, on the record, now before us. *Moneyweight Scale Co.* v. *McCormick,* 109 Md. 170; *Lasky* v. *Smith,* 115 Md. 374; *Mertens* v. *Mueller,* 119 Md. 534; *Brown* v. *Smith,* 119 Md. 249; *Chapman* v. *Nash,* 121 Md. 611; *Mertens* v. *Mueller,* 122 Md. 317.

The declaration is in the usual approved form in such cases, and charges in substance that the warrant and bail bond was sent to the clerk of the Crcuit Court by the Justice of the Peace, to await trial at the next term of that Court, and that the case was entered upon the criminal recognizance docket of the Court but that the State's Attorney refused to prosecute it, and the suit was abandoned. It then avers, that the swearing out of the warrant and the posecution of the plaintiff by the defendant was falsely and maliciously done without any reasonable or probable cause and there was no reasonable or probable cause for the warrant and arrest, and that the charge was made through motives of malice, and that as a result the plaintiff was greatly wronged and injured.

It is admitted and not disputed by the appellant, that there was a criminal prosecution as set out in the declaration, and that it terminated in favor of the accused before the institution of this suit, but it is earnestly insisted upon the part of the defendant, that there was no evidence legally sufficient to establish the want of probable cause or to show malice, in swearing out the warrant, under the facts of the case.

In *Boyd* v. *Cross,* 35 Md. 196, it is said, "to entitle the plaintiff to recover for malicious prosecution, it was incum-

bent upon him to prove affirmatively, that he had been prosecuted, or that a prosecution had been instigated, by the defendants, or one of them; that such prosecution had terminated in his discharge or exoneration from the accusation against him; and that such prosecution was both malicious and without probable cause on the part of the defendants. All of these propositions must concur, and be established by the plaintiff, to entitle him to maintain his action. If the evidence adduced be legally insufficient to be submitted to the jury to prove each and all of these elements of the plaintiff's case, his action could well be pronounced groundless, and the defendant not be called on for his defense.

What will amount to such combination of malice and want of probable cause, as will entitle a party to maintain an action, says Chief Justice Tindall (*Williams* v. *Taylor,* 6 Bing. 183), is so much a matter of fact in each individual case, as to render it impossible to lay down any general rule on the subject; but there ought to be enough to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused. Perhaps the most accurate definition of probable cause is that given by Judge Washington, in *Munns* v. *Dupont,* 3 Wash. C. C. Rep. 31, as being "such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to warrant a cautious man in believing the party accused to be guilty."

While it is well settled in cases of this kind that the plaintiff must prove that the prosecution was both malicious and without probable cause to entitle a recovery, the existence of malice is a question of fact for the jury, under the circumstances of each case. *Boyd* v. *Cross,* 35 Md. 194.

It is also well established that the want of probable cause is a mixed question of law and fact.

In *Boyd* v. *Cross,* 35 Md. 196, it is said and re-affirmed in subsequent cases, as to the existence of the facts relied on to constitute the want of probable cause, that is a question for the jury; but what will amount to the want of probable cause in any case, is a question of law, for the Court. The

jury, in our practice, are always instructed hypothetically as to what constitutes probable cause or want of it, leaving to them to find the facts embraced in the hypothesis. *Cooper v. Utterbach,* 37 Md. 282; *Torsch v. Dell,* 88 Md. 459; *Chapman v. Nash,* 121 Md. 611.

We cannot hold then, upon the facts and circumstances of this case as disclosed by the record, that there was no legally sufficient evidence to be submitted to a jury to establish malice and want of probable cause upon the part of the defendant, in the arrest and prosecution of the plaintiff, as set forth in the declaration.

It would be extending the doctrine established by the cases relied upon by the appellant, much further than it ever was intended by those cases if under the facts of this case, we should so hold.

A brief review of the evidence, will disclose the following state of facts, presented in the course of the trial:

The plaintiff testified that he entered upon the employment, in pursuance of the contract, on the 7th of March, 1913, and discharged his duties in a workmanlike manner. He identified the written notice offered in evidence, as the one that was served upon him, and testified further as follows: "She took all the feed away, turned my hogs out down the lane, drove them down the lane and took the team away to prevent me from doing the work. When she moved the hay from the mow she threw some chicken coops down on the barn floor and broke a lamp on my surrey. She broke two locks for me, one was on the feed bin (the locks were produced at the trial). She took a barrel of my corn out of the bin. She took my pruning shears. After the expiration of ten days from the service of written notice, defendant came to the farm with a team and a man, who we afterwards learned was the defendant's brother-in-law, and wanted us to move out. My wife became frightened, and they then went away, the man came to the house, and when he saw that my wife was frightened, he apologized and went away. Defendant did not come to the house. I was arrested on November

4th, election day., I was taken down through the town, past the polls to the magistrate's office by the constable. There was a great many people on the street that day. I didn't go back to husk corn that day. Several days later I did. I took a two years' course in the Maryland Agricultural College."

He further testified on cross-examination: "She told me to go and look at the peaches, and if they were fit we should pick them. I was there to use my own judgment and hers too. The trouble started when I wanted the balance of my money. She owed me some wages. She told me to quit before the written notice was given. She came to the field where I was husking corn and stood on the corn pile so I could not throw the corn on it. I was performing my contract."

Talbott Smith, a witness, testified, I helped to haul the hay from the barn and saw Miss Bishop throw the coops from the hay mow. Do not know if they hit the surrey or not.

Mrs. Frantz, the wife of the plaintiff testified I saw Miss Bishop turn our hogs out and drive them down the lane along the sweet corn patch. This was while the plaintiff was being taken down to the squire's office, under arrest.

Arthur L. Towson, a farmer and fruit grower and who lived on the adjoining farm testified that he was over there through the peach orchard once or twice and the plaintiff did his work well, that he observed how he did his work.

Claude M. Ferguson, the constable who made the arrest of the plaintiff, testified, "I saw defendant and talked to her before the arrest. She spoke about the plaintiff feeding too many hogs. In the squire's office I heard her say that she broke some locks and that she let his hogs out. The plaintiff was in the field husking corn when I arrested him."

These were all of the witnesses examined upon the part of the plaintiff, except the Justice of the Peace and the State's Attorney. The former testified in substance that the defendant swore out the warrant for the arrest of the plaintiff, that he was arrested, brought to his office, and the defendant never

inquired about the case after the arrest, that he never sent for Miss Bishop and the warrant was filled out by her attorney.

The latter testified, that Mr. Spessard, the attorney for Miss Bishop came to him during the November term of Court, and asked him not to prosecute the case, and he told him there was nothing to proceed on. He testified in rebuttal: Mr. Spessard did come to see me on election day and asked me to advise Mr. Frantz to quit work, and I told him I would not so advise him. Mr. Spessard further said you know how those people are, if he don't quit they will have him arrested. I didn't say "that is just what we want you to do," but said "go do your worst, I am sick and tired of the whole darn business."

Miss Bishop, the defendant, testified, that she gave the plaintiff a verbal notice of discharge, in October, 1913, and the written notice two weeks afterwards, that she discharged him because he was not inclined to do the work, and she could not use him any longer, that he would not do the spraying and she had trouble with him about the performance of other work, that he was indifferent to his duties. He would husk corn when I did not want him to do it and I would have to send the children up to haul it in. I told him the reason I didn't want him any longer. I talked to Mr. Spessard and advised with him every day until the warrant was issued. Before swearing out the warrant I advised with Mr. Spessard, told him the corn was being husked, hogs were in pens, was afraid of big hog. On Mr. Spessard's advice I swore out this warrant. After warrant was issued I did nothing toward prosecuting the case. I had no actual malice toward Mr. Frantz. I relied on Mr. Spessard, I believed his advice to be sound. Q. Why did you swear out the warrant? A. I issued the warrant because I wanted him to stop husking corn. I understood it would make him stop husking corn. I depended on Mr. Spessard. I took the team away to keep him from hauling over wet fields. His pruning shears were like mine, and I took away every one so he could not trim any more. I went a round-about way so I would,

not have to go across the alfalfa field. I took corn away, I had left some corn there. I thought the corn was mine. I didn't know it belonged to Mr. Frantz until it was moved. I did break the lock on the bin. It was my bin and it was the first time I had seen a lock on it. I broke the lock with a hammer. I did drive the hogs away. I wanted him to understand I didn't want his services any longer. I sent word to Mr. Frantz. I went there afterwards with my brother-in-law. I did not consult my father about the warrant, but did about plaintiff's conduct.

She testified upon cross-examination as follows: Q. Did you know that he would be arrested? A. Yes, I knew he would be arrested. Q. Did you want him arrested? A. Yes. Q. Did you know the contents of that paper you swore to? A. I did not know what was all in that paper. Q. Would you have charged Frantz with a crime to make him quit husking corn? A. I would not. Q. Why did you want him to quit husking corn? A. The ground was wet and I had to damage the fields if I wanted the corn. Q. Would you have wanted Frantz sent to jail or the penitentiary? No, I wouldn't. I thought he would be fined a couple of dollars. I don't deny if I injured the surrey, if I did, I didn't know it. In the summer when I saw Mr. Spessard my grievance was the same as in November. I told him all these things, about the spraying, his failure to perform his work. Had to beg him to let me have my horses. Mr. Spessard had seen the contract. I was begging Mr. Spessard to help. Don't know if Mr. Spessard advised me to swear out a criminal warrant, thought it was just to help to get my corn. I did the best I could for myself. Had to grin and bear it. I had him arrested for husking corn.

Mr. Harvey R. Spessard, an attorney, of the Washington County Bar, testified, that he was the defendant's attorney at the time of the arrest, and before. The defendant came to me for advice when her troubles with the plaintiff first began. She told me about his conduct, and I told her if she could prove the statements she made she would be justified

in discharging him. She came later and told me she had
discharged him, but that he refused to quit work. She said
he was husking corn and refused to quit. I had seen the
agreement. I questioned her carefully to learn the facts and
circumstances. She had been seeking my advice frequently
and telling me all about the circumstances. So far as I have
been able to learn she told me all the facts and circumstances.
I then advised Miss Bishop to serve a written notice on plain-
tiff, and that if he still went upon the fields she could have
him arrested for trespass. I prepared the notice and sent the
constable to serve it. The next day Miss Bishop came and
informed me that he was out in the field husking corn. I
then advised her to swear out a warrant. She said she dis-
liked to do that, and I told her I would see his attorney and
ask him to advise him to quit. I went up to the polling place
and saw Mr. Wolfinger, attorney for plaintiff. I asked him
if he would advise Mr. Frantz to cease going upon the fields
and quit work, and he said he would not. I told him that
Miss Bishop didn't want to have Mr. Frantz arrested, but if
he did not quit she would have to. Mr. Wolfinger then
stated "that is just what we want you to do." I then re-
turned to Miss Bishop and told her the plaintiff's attorney
refused to advise him to quit, and I again advised her to
swear out the warrant. I went to the magistrate's office and
filled out the warrant. It is in my hand writing. I relied
on the Act of 1900, Chapter 66. Outside of swearing out
the warrant, Miss Bishop had nothing to do with the prose-
cution. I did not appear at the magistrate's office when he
was brought there. He was going away before I knew that
he had been there. Nothing more was done in the matter
until I learned that plaintiff's attorney was making inquiry
about the papers in the case being sent up. I then went to
the State's attorney and asked him not to prosecute the case.
Miss Bishop had said nothing to me about it that I can re-
member. She did not like the idea of prosecuting him, and
as his attorney was advising him to go upon the fields, I could
see no good in having him prosecuted, and I just assumed

that it would be satisfactory to her. I had no notice whatever from Miss Bishop to advise State's attorney not to prosecute the case.

Upon this state of facts, we think, the Court below, was entirely right, in refusing to withdraw the case from the jury, as requested by the defendant's first, second, fifth and sixth prayers.

The case on the facts, in our judgment, falls within the rules established by this Court, in the cases of *Cooper* v. *Utterbach,* 37 Md. 310, and *Torsch* v. *Dell,* 88 Md. 459, and was a case to be left to the determination of a jury, upon proper instructions by the Court.

In *Johns* v. *Marsh,* 52 Md. 332, JUDGE ALVEY, in delivering the opinion of the Court, said, as was accurately stated by Mr. JUSTICE PARKE, afterwards BARON PARKE, in *Mitchell* v. *Jenkins,* 5 B. & Ad. 594, "the term 'malice,' in this form of action, is not to be considered in the sense of spite or hatred against an individual, but of *malus animus,* and as denoting that the party is actuated by improper and indirect motives." If, for example, a prosecution is initiated upon weak and unsubstantial ground for purposes of annoyance, or of frightening and coercing the party prosecuted into the settlement of a demand, the surrender of goods, or for the accomplishment of any other object, aside from the apparent object of the prosecution and the vindication of public justice, the party who puts the criminal law in motion under such circumstances lays himself open to the charge of being actuated by malice. Such motives are indirect and improper, and for the gratification of which the criminal law should not be made the instrument. *Add. on Torts,* pp. 594, 613; 2 *Greenl. Evi.,* sec. 453."

But it is urged upon the part of the appellant that the case should not only have been withdrawn from the consideration of the jury but there was error in the Court's modification of the defendant's third prayer, by the insertion of the words, "And in good faith acted thereupon without malice" and the jury was misled thereby to the injury of the defendant.

The defendant's third prayer, after stating the facts therein, instructed the jury "and if they further find that the defendant upon consultation with her counsel disclosed unto him all the facts and circumstances surrounding the employment and hiring of plaintiff and their relations to each other and concealed nothing and that said attorney advised the issuing of the warrant offered in evidence and that defendant believed said advice to be sound, and in good faith acted thereupon without malice, then there was probable cause for the issuing of said warrant and the arrest of the plaintiff, if the jury so find, and their verdict must be for the defendant."

By the defendant's fourth prayer, the jury were instructed, that if they shall find that the defendant, in reference to.the institution and prosecution of the charge complained of, acted *bona fide.* and without malice, under the professional advice and direction of her counsel, Mr. Spessard, that she then and there stated to her counsel all the material facts that she knew at the time were capable of proof, or which by the exercise of reasonable diligence she could have ascertained, and concealed nothing material, that she then believed said advice to be sound, then she is not liable, and the plaintiff cannot recover in this action, even though Mr. Spessard's advice may not have been sound, and although, but for such advice the defendant would have had no probable cause for her action.

It will be seen, that these prayers (third and fourth) were granted in connection with the plaintiff's first prayer, and the jury were told by the first instruction, that if they find the facts set forth in either the third or fourth prayers granted on the part of the defendant, then the plaintiff was not entitled to recover, and their verdict must be for the defendant even though the jury may find the facts set forth in the plaintiff's first prayer.

The jury were instructed by the first prayer, after setting out the facts in the prayer, "and that the defendant procured the arrest and prosecution of the plaintiff before the said

justice of the peace under such circumstances as would not have induced a reasonable and cautious person to have undertaken a prosecution from public motives, then there was no probable cause for said prosecution, and the jury may infer in the absence of sufficient proof to satisfy them to the contrary, that said prosecution was malicious in law, and their verdict may be for the plaintiff, unless the jury find the facts set forth in the defendant's third or fourth prayer."

The jury were not only at liberty, if they found the facts, set out, in either the defendant's third or fourth prayers to find a verdict for the defendant but they were instructed by the plaintiff's first prayer, if they so found, then the plaintiff was not entitled to recover, and their verdict must be for the defendant even if the jury may find the facts set forth in the plaintiff's first prayer.

The plaintiff and defendant's granted prayers (these prayers will be set out by the Reporter, in his report of the case) in our judgment, fairly submitted the law of the case, as applicable to the two main facts and propositions, at issue, that is, the want of probable cause for the prosecution and malice, as the motive of the prosecution.

In *Metcalf* v. *Brooklyn Ins. Co.,* 45 Md. 204, it is said: "The union of these two conditions, is essential to the injury, known as malicious prosecution. The absence of either, is fatal to the suit. Malice may be inferred from the want of probable cause, but where probable cause exists, malice, however intense, will constitute no cause of action."

It does not appear, that the defendant in this case could have been injured by the modification of the third prayer, in view of the other granted prayers, and the ruling of the Court in this respect even if erroneous, could form no ground for a reversal.

Finding no reversible error in the rulings of the Court, the judgment will be affirmed.

*Judgment affirmed, with costs.*